(92 App. Div. 352.)

## MILLER v. NORCROSS et al.

(Supreme Court, Appellate Division, First Department. March 11, 1904.)

1. BUILDING CONTRACT—DELAY OF SUBCONTRACTOR—COMPLETION BY CON-
    TRACTOR—RESPONSIBILITY FOR STRIKE.

     A strike occasioning delay in the work of plastering a building was not "through no default" of the subcontractor, within the contract, which otherwise allowed the contractor to complete the work at the subcontractor's expense; it having been caused by his language to the plasterer's delegate, in consequence of a dispute with such delegate because of his furnishing plasterers to the contractor to fill up the cracks in plastering which had been done, and which the subcontractor had refused to fill up on the ground that he was not responsible therefor.

2. MECHANIC'S LIEN—AMOUNT DUE SUBCONTRACTOR—EVIDENCE.

     Evidence in an action to enforce a mechanic's lien by one who furnished materials to the subcontractor *held* insufficient to support a finding that work of a certain value only remained undone when the subcontractor abandoned the work.

3. CONTRACTORS—LIABILITY ON ACCEPTED ORDER OF SUBCONTRACTOR.

     A contractor who accepts an order of the subcontractor in favor of a materialman is not liable thereon; there remaining unpaid to the materialman only the amount which under the order was to be paid to him out of the amount due on the last payment to the subcontractor when his work was finished, and no last payment having become due to him, because he abandoned the work, which was completed by the contractor at a cost exceeding the amount which would have been owing the subcontractor, had he completed it.

Appeal from Special Term.

Action by Clifford L. Miller against Orlando W. Norcross and another. From a judgment for plaintiff on a decision of the court, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, INGRAHAM, and LAUGHLIN, JJ.

P. J. Carlon, for appellant Norcross.
Frank L. Crawford, for appellant Lying-in Hospital.
Jacob F. Miller, for respondent.

INGRAHAM, J. This action was brought to foreclose a mechanic's lien filed on behalf of the plaintiff, who had furnished to Mertz & Gibb certain material used in the construction of a hospital in the city of New York, the property of the defendant corporation. The complaint alleges that the defendant corporation, the owner of certain property described, made a contract with the defendant Norcross to

erect a hospital upon the property; that Norcross made a contract with Mertz & Gibb whereby Mertz & Gibb agreed to do the mason work and plastering in said building, and to furnish the labor and materials therefor, a copy of which contract is annexed to the complaint; that Mertz & Gibb entered into the performance of that contract, and proceeded with the same until the 10th day of April, 1901, when their workmen employed struck and refused to work upon the job, through no fault or wrong of the said Mertz & Gibb; that they applied to said Norcross for an extension of time equivalent to the delay caused or to be caused by the strike, but that said Norcross refused to grant any delay or comply in any way with the said application; that Norcross had demanded of Mertz & Gibb the performance of the work not theirs to do, but which had been left undone, or imperfectly done, by other contractors, and that the refusal of the said Norcross Bros. to grant the desired delay was owing to the refusal of said Mertz & Gibb to do the other contractors' work at their own expense, and that while the strike was continuing the said Norcross Bros. wrongfully took advantage of the situation to try to force Mertz & Gibb to do the work which they had not agreed to do, and which by their contract it was not their duty to do, and wrongfully took away from them the privilege of completing their work, and entered upon the completion of the work themselves with the view and intent of charging all the work undone, whether theirs or not, to the said Mertz & Gibb, so as to absorb the moneys due and to become due to said Mertz & Gibb under the contract; that, at the time of the filing of the notice of lien, Mertz & Gibb had duly performed part of the conditions of said contract on their part to be performed, and so far completed the same as to become entitled at the time of filing of said notice to a payment on account of said contract, and at the time of filing said notice there was due and owing to said contractors and the subcontractors, Mertz & Gibb, from said owner, a sum in excess of the amount of plaintiff's lien therein; that the plaintiff furnished to Mertz & Gibb certain building materials for and used in the construction and erection of said hospital and buildings on the premises of the owner, which said materials were reasonably worth the sum of $16,020.18; that the plaintiff has been paid the sum of $13,014.80, leaving the sum of $3,005.38, with interest thereon, unpaid. By the agreement between Norcross and Mertz & Gibb, annexed to the complaint, Mertz & Gibb agreed to provide all the materials for, and perform in a good and workmanlike manner, under the direction of Norcross, and according to the drawings and specifications of Robertson, architect, all the work mentioned as set forth in said drawings and specifications, which are to be considered as forming a part of this agreement; and they further agreed to commence the work as soon as required by, and carry it forward as rapidly as permitted by, the progress of the building, and to complete it in season not to delay the finishing of the building, "provided he is not obstructed or delayed in the prosecution or completion of his work by the act, neglect, delay or default of the said first party, or of any other contractor employed upon the work, or by any damage which may happen by the action of the elements, or by the abandonment of the work by employés through no fault of his, in which event an extension of time

equivalent to such delay shall be granted upon application to the said first party in writing within twenty-four hours of such delay"; that "in case of any failure or unreasonable delay of the said second party [Mertz & Gibb] whether by act or default in the performance of any of the above stipulations or compliance with the true intent of these presents, not authorized in writing by the said party of the first part, it shall be lawful for the said party of the first part, after three days' notice in writing to said party of the second part, to provide other workmen and materials to complete the said work in the place of the said party of the second part and to deduct the cost and charges thereby occasioned from the sums otherwise becoming due to the said party of the second part under this agreement without prejudice to any other remedy which the said party of the first part may have for breach thereof." And Norcross agreed to pay to Mertz & Gibb, when the terms of the contract are complied with, and upon sufficient evidence that all claims upon the building for work or materials up to the time of payment are discharged, the sum of $35,370. This amount is to be paid in monthly installments, in proportions as the work progressed; 15 per cent. being reserved to be paid within 30 days from completion of the work. This contract was dated the 16th day of April, 1900. It was not disputed but that the plaintiff furnished the materials specified in his complaint, and had received the amount on account thereof specified in the complaint, which left a balance due him from Mertz & Gibb of $3,005.38.

Upon the trial the court found the making of this contract; that Mertz & Gibb entered into the performance of the work, and while so engaged, on the 10th of April, 1901, without any fault or negligence of Mertz & Gibb, the workmen in their employ, 25 or upwards in number, instigated and controlled by a walking delegate, struck and refused to work upon the job until Mertz & Gibb became reconciled to the delegate and the union; that on the 11th of April, 1901, Mertz & Gibb requested an extension of time equal to the length of the strike for the completion of their work under the contract, but that Norcross refused to grant the extension, and suggested that they wait a few days, and see how the strike came out; that on the same day, in the morning, and without any notice to or permission from the said Mertz & Gibb, said Norcross wrongfully took the job out of their hands and proceeded to do the work himself, claiming that they were doing it for and on account of said Mertz & Gibb, and intending to charge the expense upon them; that at the time of taking the work out of the hands of said Mertz & Gibb there had been no unreasonable delay on the part of Mertz & Gibb, or failure on their part in the performance of any of the stipulations in the said contract, or compliance with the true intent of the same, and that said Norcross neither served upon the said Mertz & Gibb a notice in writing to the effect that he intended to provide other workmen and materials to complete the said work in the place of said Mertz & Gibb, or any notice as prescribed in and by said contract, nor would he have been warranted in giving such a notice of terminating the contract with said Mertz & Gibb; that, when said Norcross wrongfully took the work out of the hands of Mertz & Gibb, they had performed extra work on written orders from said Norcross of the agreed value

of $788, and had received from the said Norcross on account of the contract the sum of $29,048, leaving still unpaid on the contract and for extra work the sum of $7,118; that the fair and reasonable cost of completing the work called for in the contract when said Norcross took possession as aforesaid was $2,800; that the said Mertz & Gibb, if unmolested, would have finished the work, and furnished what materials were used, and could have done so for this sum. As a conclusion of law, the court found that Norcross became indebted to the plaintiff in the sum of $3,005.38, with interest, for which sum the plaintiff was entitled to judgment, and directed the enforcement of the mechanic's lien in the usual way.

The plaintiff relied upon the testimony of Mertz, one of the subcontractors, and there were introduced in evidence a considerable number of letters that passed between Norcross and Mertz & Gibb in relation to the performance of this contract. It would seem that, as the work progressed, cracks appeared in the plastering done by the plaintiff, which Norcross required Mertz & Gibb to repair; that Mertz & Gibb insisted that these cracks were caused by defective work done by other contractors in repairing the walls upon which the plaster was placed by Mertz & Gibb, and Mertz & Gibb deliberately refused to make these repairs. On March 13, 1901, Norcross wrote to Mertz & Gibb, stating that the architect had called his attention to certain cracks in the plaster work of the building, and asked that they be repaired immediately; that:

"We understand you refuse to do this for various reasons, and if you will refer to your specifications you will find that your work was to be left perfect and that no excuse would be taken for any defects caused by any other person's work—unless they were called to the architect's attention at the time the work was executed, we therefore in accordance with our contract with you call upon you to at once have the defective plaster work repaired."

In answer to this letter, Mertz & Gibb wrote on March 22, 1901, stating that it was very evident that the cracks referred to were the result of construction, and could in no way be attributed to the shrinkage of white mortar, as claimed in Norcross' letter, and closing with this statement:

"We have never at any time,. and do not at present refuse to make good any defective work on our part, and stand ready to do so in the present instance, but we do not consider it just to be held accountable for defects which are obviously the result of the workmanship.of others."

In reply, on March 23d, Norcross wrote:

"We fully realize the difficulty in placing the responsibility of the cracks in the angles, but we are not prepared to admit that some of the trouble was not caused by some defect in the plaster work (either in the contraction of the mortar or by the unequal thickness of mortar); neither are we prepared to attribute the cracking to defective workmanship on the partitions"—and after stating the reason which led them to conclude that at least some part of the defective work was that done by Mertz & Gibb, continued: "This being the case—and it being difficult to place the entire responsibility where it belongs— is the reason why we say to you that the easiest way and the best way would be to leave the work properly repaired, and ask Roebling to pay a proper proportion of the expense."

There seems to be no answer to this letter, but on March 30, 1901, Norcross again wrote to Mertz & Gibb, stating that he was informed

that they still refused to go on with the work under these conditions, and stating:

"We now call upon you to perform your contract and finish that work, and turn it over to us in a manner satisfactory to the architect, as called for by the specifications. ＊ ＊ ＊ We have borne with great deal of annoyance on this plastering, and we certainly shall not stand it any longer. We wish a large force of men put there to finish up the plastering of that building, otherwise we will have to take the matter into our own hands in accordance with clause 3 of our contract, therefore we hereby give you that notice."

Upon the said day Mertz & Gibb replied to this letter as follows:

"In reply to your favor of even date would state that we refuse to do any repairing of any of the cracks caused by other's work and not attributed to any defective material or workmanship on our part. ＊ ＊ ＊ We are ready to carry out our part of the contract and expect you to do the same. In going over the second floor to-day we find a great many cracks in the angles caused by the floors."

To this letter Norcross replied on April 1st, and said:

"We have already notified you that unless your work at that building was carried along in a more satisfactory manner, we should have to put on other men—according to clause 3 in your contract. We beg to call attention to a clause in your contract which reads as follows: 'In case any of said work done, or materials provided by the said party of the second part shall be unsatisfactory to the architect or to the said party of the first part, as your employers, then the said party of the second part will, on being notified thereof by the said first party, immediately remove such unsatisfactory work or materials, and supply the place thereof with other work and materials satisfactory to the said architect and to the said first party.' ＊ ＊ ＊ We have shown you the easiest way out of the matter, which is to make the work good, and we will see that part of the amount is paid by the Roebling people; we do not ask you to look to the Roebling people at all. If you do not do this, we shall have to put on men to do the work and charge the expense to your account hereafter. We also find that after all our repeated notices to you, you have only 8 plasterers at work, when you should have at least three times that many."

To which letter Mertz & Gibb replied on the same day, stating that they were taking men from other jobs to the hospital building, and hoped in a day or two to be going with full force. On April 4th, Norcross wrote to Mertz & Gibb; stating that, in accordance with the clause in the contract, he had put on men to cut out the cracks in the plastering and to repair them; calling upon them to select an arbitrator who would act with one selected by the other persons to determine who was responsible for the cracks; notifying Mertz & Gibb to smooth some plastering with sandpaper, and do the patching which was a part of their contract; and closing as follows:

"In accordance with our former notice to you, unless you put men on this work at once, we will proceed to hire them and charge the same to your account. This work must not be delayed any longer by obstructions on your part."

Thus the situation on April 4th was that after repeated demands on Mertz & Gibb to do certain work which it was alleged they were bound to do under the contract, and which they had refused to do, Norcross had put men on to do this work, and then demanded that they proceed to do the balance of the work, or, upon a failure to do so, Norcross would, under the provisions of the contract, to which attention has been called, employ men to do this work, and charge it to the amount to be

paid by them to Mertz & Gibb. It is not disputed that Norcross had a right to give this notice, and it is not disputed that Norcross had a right to employ men to repair those cracks, whether Mertz & Gibb were bound to repair them under the contract or not. If Mertz & Gibb were not bound to repair them, then Norcross could not have charged against Mertz & Gibb the amount that they paid for repairing the cracks. If Mertz & Gibb were bound to repair those cracks, Norcross had the right to employ the men, as Mertz & Gibb had refused to do the work, and charge the amount to Mertz & Gibb upon the final completion of the work. Norcross therefore certainly was acting within his rights in employing these men, and to that, certainly, Mertz & Gibb could have no objection. At this same time, on April 4th, Mertz & Gibb were duly notified to complete their work under the contract, which they admitted they were bound to complete, and of the progress of which work constant complaint had been made in the correspondence before set out; and then distinct notice was given that, unless they put men on the work at once, Norcross would proceed to hire them, and to charge the cost to their account, and that the work could not be delayed any longer by the obstruction on the part of Mertz & Gibb. Mertz & Gibb then had the notice provided for by the contract. They had then notice to complete the work under the contract which they conceded they were bound to do, or, in default, Norcross would employ men to do the work, and charge the costs to Mertz & Gibb. Up to this point this correspondence speaks for itself. Mertz & Gibb in their letters seem to have conceded that the work was not progressing as required by the contract, for there were promises that more men would be put to work, and that the work would progress satisfactorily. From the date of this letter of April 4th, Mertz testified that they were proceeding with the work under the contract; that on April 10th the plasterers' delegate came in the building, and Mertz had a conversation with him; that about three days afterwards Mertz was notified by this delegate to come to the Plasterers' Union; that he did not go to the rooms, and the next morning the men struck work on the building. Mertz further testified that he had asked the plasterers' delegate whether he thought it was right that he should send some men to the building to repair certain cracks in the building without asking "us the cause of the trouble"; that "he sent the men there for Norcross Bros. over our head, and Norcross Bros. and ourselves had some controversy in regard to these cracks before, and, without settling the question at all, through the delegate, then, the superintendent put on some plasterers in the building in connection with our work, but they were working for Norcross Bros.; and I asked the delegate whether he thought this was right, without asking us first the cause of the trouble"; that to that, the delegate said he did, whereupon Mertz asked him who he thought he was talking to; that the delegate replied that "he did not give a d——— who he was talking to"; that Mertz replied that, "if he went on like that, I would put him out of the building," whereupon they parted, and it was in consequence of this dispute that the strike was ordered; that the delegate requested Mertz to go to the Plasterers' Union on Tuesday night, but Mertz refused to go, and the next day the men refused longer to work for him. This is the account which

Mertz gives of the cause of the strike which resulted in the men leaving the work. Mertz evidently has the dates somewhat confused. As it seems to have been afterwards conceded on both sides that the strike happened on April 10th, as a result of Mertz's refusal to confer with the Plasterers' Union on the 9th, and that this interview with the delegate happened two or three days before, it must have been the 6th or 7th of April; the notice to which attention has been called having been served upon Mertz & Gibb on the 4th of April. At any rate, on the 10th of April the men struck, and Mertz testifies that he notified Norcross' superintendent of that fact. Mertz testified, and the court found, that Norcross took the work out of the hands of Mertz & Gibb on the following day (April 11th), but that seems to have been a mistake. Mertz confesses that he had no personal knowledge of what happened in the building after the men struck. Undoubtedly there were plasterers working at the building during the week, but it would appear that they were all plasterers that were employed by Norcross in repairing the cracks which Mertz & Gibb had been notified to repair, but which they had refused to repair, as not called for by the contract. On April 16th Norcross wrote a letter to Mertz & Gibb, in which he said: "The matter of the delay to the plastering at the Lying-in Hospital building is assuming very serious proportions, and we must now again call upon you for the last time to put in a sufficient number of men to finish it according to contract;" and stating that the reason that the men refused to work was caused by the defendant's language to the delegate, which was caused by the fact that he had brought the delegate to task for giving Norcross men to finish up the cracks in the plastering which Mertz & Gibb had refused to do. This "changes the strike aspect of the case entirely and leaves you responsible for the actions of the men; it is therefore your duty to at once go before the board as they requested you before, and have this matter settled once for all. We shall not wait any longer than this day at 6 o'clock, as you have already had your three days' notice according to the contract. If you cannot furnish the necessary men after that time, we will finish the plastering ourselves at the least possible expense, and charge it to your account." No answer appears to have been received to the letter, whereupon Norcross went on and completed the work, and there was undisputed testimony that he paid out an amount largely in excess of that remaining unpaid upon the Mertz & Gibb contract. On April 10th the men refused to work for Mertz & Gibb, and after that they made no attempt to complete the work; never expressed any willingness to proceed; simply abandoned it until August 7th, when, in consequence of financial difficulties, a receiver of the firm was appointed.

Now, these facts are not disputed. They are conceded by subsequent letters from Mertz & Gibb to Norcross, and there is no evidence to show that Mertz & Gibb could possibly at any time after the 10th of April have procured workmen to complete their contract. Unless they are relieved from their obligation to finish this work by reason of the clause of the contract to which attention has been called, it would seem to be clear that at the time the lien was filed there was no money due to Mertz & Gibb, and that no money subsequently became due. The contract expressly provides that the work is to be pushed forward

as rapidly as possible, provided Mertz & Gibb are not obstructed or delayed in the prosecution or completion of the work "by the abandonment of the work by the employees through no default of his, in which event an extension of time equivalent to such delay shall be granted upon application to said first party in writing within twenty-four hours of the occurrence of such delay."

For several reasons it appears to me that, upon the undisputed testimony, Mertz & Gibb have not brought themselves within this provision of the contract. In the first place, no application in writing was presented to Norcross within 24 hours of the happening of the delay. Mertz swears that he saw Norcross' manager, and Norcross advised him to wait a day or two, and see what would happen, but no written application for an extension of time in writing was made. The delay continued, according to the clear weight of the evidence, until the 16th, before anything was done, upon which day Mertz & Gibb were notified that, unless they procured men on the next day, Norcross would take charge of the work himself. They made no answer to this application at all, and, so far as appears, never made any attempt after that to complete the work.

It is also quite apparent that the cause of the strike was through the default of Mertz & Gibb. What men he had at work were working on the building when Mertz himself called the plasterers' delegate to account for furnishing Norcross with men to fill up the cracks in this building. Norcross had again and again called on Mertz & Gibb to perform that work. They had refused. Norcross had given them the notice under the contract that, in case of their continued refusal, Norcross would do that work. Mertz & Gibb had still refused, and Norcross had a perfect right to do the work. The question as to who was to pay for it was to be determined thereafter. It certainly was no business of Mertz & Gibb to interfere with Norcross in doing the work, or to call the plasterers' association to account because they allowed their men to do that work. According to Mertz's own account, his language to the delegate in consequence of that dispute was the cause of the strike. It certainly cannot be said that such a strike was "through no default of his." Norcross was constructing an expensive building, the necessity of the situation requiring that the various subcontractors should keep up with their work. Mertz & Gibb's delay in the performance of their contract had been the cause of remonstrance after remonstrance from Norcross, and certainly there must have been some time at which the situation absolutely required Norcross to take the work out of their hands and complete it. Here the whole work was suddenly brought to a stop by the men refusing to work longer for Mertz & Gibb, and this refusal brought on by the unreasonable and unjustifiable complaint of Mertz that Norcross had been allowed to obtain men to do his own work without the consent of Mertz & Gibb. Mertz & Gibb never did make up their dispute with the union, and, so far as appears, were never thereafter able to complete this work; and I think that, upon the overwhelming weight of evidence, it is quite apparent that this whole difficulty was caused by the neglect and refusal and inability of Mertz & Gibb to complete the work that they had agreed to do, and comply with their contract.

I also think that, by a great preponderance of evidence, the amount of work that Mertz & Gibb left undone at the time the contract was in effect abandoned by them was much in excess of the amount which, according to Mertz's testimony, was unfinished at the time they abandoned the work. The whole testimony upon which the finding that work of the value of $2,800 remained to be done to entitle Mertz & Gibb to the total amount to be paid to them under the contract was based upon the testimony of Mertz. He testified as to the work that remained to be completed, and that it would cost $2,800 to finish it. He is contradicted by his letter that he wrote to the defendant on May 1st. That letter pretends to give a brief statement of the facts showing the present relations of the parties to the contract, and says:

"We have performed all of the work under our contract, except about $8,800 worth. We are unable to complete that, on account of the abandonment of the work by our employees. We claim that this abandonment was without any default on our part. You claim that the abandonment was a strike, alleged to have been induced by our conduct toward the delegate of a labor union."

Mertz, when confronted with this letter, admits that he dictated it; that he read it over, signed it, and sent it; but he states that he did not mean to say that there was $8,800 worth of work not finished, but that he was to receive that amount from Norcross when the contract was completed. But the letter shows that that could not have been his meaning. He was speaking of the completion of the contract, not of the amount that he would be entitled to receive upon the completion of the contract; and from the whole letter it is quite evident that it was written under what he speaks of in his letter as the "advice of reliable counsel." It is not conceivable that a carefully prepared letter, written under the advice of counsel, could have contained such a mistake as Mertz seeks to show that it contained; and in the face of the evidence by the defendant showing that a much larger amount of work was undone than that testified to by Mertz, and that the cost of doing that work was several thousand dollars more than the total amount that would have been payable to Mertz & Gibb by Norcross if they had completed their work, I do not think that the finding that the work left undone amounted to $2,800 was sustained by the evidence.

Taking this controversy as it stands, the question is whether the plaintiff, who furnished Mertz & Gibb with materials to do their work, or Norcross, who was compelled to do the work left undone by Mertz & Gibb at an expense in excess of that at which Mertz & Gibb were to receive, is to bear the loss; and, to impose a liability for that loss upon Norcross, it must appear that Norcross did owe Mertz & Gibb the amount that the plaintiff claimed from Mertz & Gibb. It seems to me that if Mertz & Gibb had been plaintiffs, and were suing Norcross to recover a balance due upon a contract, Norcross could not be held liable; and, as the plaintiff can only recover the amount that was due by Norcross to Mertz & Gibb, I think that there was nothing due, and that the plaintiff was not entitled to recover. The order given by Mertz & Gibb in favor of plaintiff, and which was accepted by Norcross, does not justify a recovery against Norcross, because, so far as appears, all moneys agreed to be paid to plaintiff, except the 25 per cent. of the value of the materials furnished, had been paid, and, as that

25 per cent. was to be paid out of the amount due on the last payment to Mertz & Gibb when the plastering work was finished, and as no last payment ever became due to Mertz & Gibb, they never having finished the plastering work, nothing was due to the plaintiff.

It follows that the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.

---

(92 App. Div. 1.)

In re LONG ISLAND LOAN & TRUST CO.

... Appeal of SLOAN.

(Supreme Court, Appellate Division, Second Department. March 18, 1904.)

1. TRUST—SALE OF TRUSTEE'S PROPERTY TO TRUST—PUBLIC POLICY.
    The sale by a trustee of its own property to the trust is void as against public policy.

2. SAME—ESTOPPEL OF BENEFICIARY—NOTICE.
    The entry, "February 1, 1893, L. I. L. & T. Co., T. Donohue Mtge. No. 3, $7,800," in a report of a trustee to a beneficiary, was insufficient to give notice that the trustee had sold the mortgage, which previously belonged to it, to the trust, so as to form the basis of an estoppel of the beneficiary from questioning the invalidity of the act.

3. SAME—DECREE IN ACCOUNTING.
    A decree on a trustee's accounting does not estop the beneficiary from questioning the validity of a prior act of the trustee which was not litigated on that accounting.

4. SAME—BURDEN OF PROOF.
    Where a trustee relies on a decree in a former accounting to estop the beneficiary from questioning the validity of a sale by the trustee to the trust, the burden is on the trustee to show that the question was litigated.

5. SAME—REFUSAL TO OPEN DECREE.
    Where the validity of a sale by a trustee of its property to the trust was not litigated on an accounting, the refusal of the court to open the decree does not estop the beneficiary from questioning the validity of the trustee's act in a subsequent accounting, the opening of a decree being a matter within the discretion of the court.

Appeal from Surrogate's Court, Kings County.