# Salinger v. Fidelity & Casualty Company of New York.

## (Decided December 14, 1917.)

## Appeal from Shelby Circuit Court.

1. **Insurance—Accident Insurance—When Injury Not by Accidental Means.**—An injury is not produced by accidental means within the terms of an accident insurance policy insuring against bodily injury sustained through accidental means and resulting directly, independently and exclusively of all other causes, where it is the direct though unexpected result of an ordinary act in which the insured intentionally engages.

2. **Insurance—When Blindness Not Caused by Accident.**—Where a person insured against bodily injury sustained through accidental means resulting directly, independently and exclusively of all other causes, exerted himself in placing boxes upon a high shelf, to such an extent as to cause a blood clot to lodge against the retina of his eye and cause blindness, the blindness was not caused by an accident within the meaning of the policy.

BEARD & PICKETT for appellant.

RALPH W. GILBERT for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellee company insured the appellant, Joseph Salinger "against bodily injury sustained—through accidental means—and resulting directly, independently and exclusively of all other causes" in total or partial disability. Salinger was a merchant in Shelbyville, and while in the act of lifting a bundle of boxes filled with corsets and weighing about twenty-four pounds, to a shelf somewhat higher than his head, he noticed that he could not distinctly see the numbers upon the boxes. Thinking the trouble was with his glasses, Salinger removed them for the purpose of cleaning them, and found that he had lost the sight of one of his eyes. He was sixty years old, was in good health, and suffered no pain.

Salinger filed this action against the company to recover $2,500.00, the amount fixed by the policy for the loss of an eye, claiming that he had lost his eye through accidental means resulting directly, independently and exclusively of all other causes. The answer traversed the petition and affirmatively alleged that Salinger was afflicted with embolus, and that said disease and his bodily condition resulting therefrom were the causes of

the loss of his eye.  At the conclusion of all the testimony the court peremptorily instructed the jury to find for the defendant, and Salinger appealed.

Four witnesses testified: Salinger and Dr. Buckner, for the plaintiff, and Drs. Heflin and Pfingst for the company.  All of these physicians examined Salinger.

Salinger testified to the loss of his eye in the manner and on the occasion above narrated.  The physicians agreed that Salinger lost his eye from embolus, which is the technical name for a floating clot in the blood vessels.  It caused the blindness of appellant by lodging in the central artery of his eye, thus cutting off the blood supply and preventing circulation.

When asked if the effort which Salinger had made in placing the boxes upon the shelf could have caused the loss of his eye, Dr. Buckner testified that it might have been a factor in bringing about the result; that it might not have occurred if Salinger had not made the exertion; and that Salinger might have lost his eye from embolus if he had not made the exertion.

Upon cross-examination Dr. Buckner further stated that if it had not been for the existence of this foreign substance in the artery, causing embolus, then no manner of exertion or force that Salinger might have employed in putting the boxes on the shelf, would have caused the loss of his sight; and, he would not say that the plaintiff's loss of his sight was independent of all other causes.  It was Dr. Buckner's professional opinion that the exertion upon the part of the plaintiff had to co-operate with his bodily condition in order to cause the loss of his sight, and that Salinger would not have lost his sight from the effort he made in placing the boxes, independently of his bodily condition.

Dr. Heflin, a physician · of nineteen years' experience, testified that he found Salinger's condition was due to embolus in the central artery of the left eye; that his condition would exist irrespective of any external force or violence; that his loss of sight was caused from the condition of his body and not from the exertion he had made; and, that it would not be possible for an exertion of that kind to cause the loss of an eye independently of any other cause.

Dr. Pfingst, a physician in active practice for more than twenty-two years, corroborated Dr. Heflin.  Indeed, there is practically no substantial difference in the testimony of Drs. Buckner, Heflin and Pfingst concern-

ing the cause of the plaintiff's misfortune; they substantially agree that it was brought about by his bodily condition and that it would not have been possible for him to lose his sight by the slight exertion he exercised independently of his bodily infirmity.

So, the question for decision is reduced to this proposition: Does an intentional exertion constitute "accidental means" of injury within the provision of the policy? It may be treated as established by the great weight of authority that an injury is not produced by accidental means within the terms of an accident insurance policy where it is the direct though unexpected result of an ordinary act in which the insured intentionally engages.

The rule is stated as follows in 1 Cor. Jur., page 426:

"If a result is such as follows from ordinary means employed voluntarily and in a not unusual or unexpected way, it cannot be called a result effected by accidental means."

In Clidero v. Scottish Acc. Ins. Co. (1892), 19 R. 355, 29 Sc. L. Rep. 303, Lord Adam said:

"A person may do certain acts, the result of which acts may produce unforeseen consequences, and may produce what is commonly called accidental death, but the means are exactly what the man intended to use, and did use, and was prepared to use. The means were not accidental, but the result might be accidental. Now if that is so, where does the question of accident come in here? There is no evidence that anything unusual or exceptional occurred as to the means or cause of this death. The man was just doing what he meant to do, and apparently a most unfortunate and unexpected result happened—the man's death."

In Shanberg v. Fidelity & Casualty Co., 158 Fed. 1; 85 C. C. A. 343, 19 L. R. A. (N. S.) 1206, where the policy insured against disability or death, "resulting directly and independently of all other causes from bodily injuries sustained through external, violent or accidental means," it was held that the company was not liable for the death of the insured from a rupture of the heart, the walls of which had been weakened from fatty degeneration, the immediate, inciting cause of the rupture being either over exertion while assisting in carrying a heavy door or deep breathing following the

exertion, neither of which was accidental. In that case the court said:

"Had the assured, while assisting in carrying the door, lost his balance and fallen and struck upon some unforeseen object, or slipped on the ice, his death might be said to have resulted from violent or accidental means, and, assuming that there was no want of due diligence on his part, would doubtless be covered by the policy. But from the facts as disclosed by the record in this case, we do not think it can be said that the rupture of the assured's heart, and which caused his death, was in any sense the result of an accident. He engaged in carrying this door for his own convenience; he encountered no obstacle in doing so; he accomplished just what he intended to, in the way he intended to, and in the free exercise of his choice. No accident of any kind interfered with his movements, or for an instant relaxed his self-control."

Again, in Schmid v. Indiana Travelers Acc. Assoc., 42 Ind. App. 493, where Schmid was insured against injuries arising from physical bodily injury through external, violent, and accidental means, and died as a result of physical exertion, and the rarified conditions of the atmosphere, while climbing the steps of a Colorado hotel, it was said he died from doing what he intended to do although the result was not anticipated, and that his death was not the result of accidental means.

Likewise, in Rock v. Travelers Ins. Co. (Cal.), 156 Pac. 1029, the insured undertook to carry a heavy casket down a flight of stairs. The exertion which he assumed was, however, beyond his strength and imposed on his vital organs a burden they could not bear. The result of his exertion was a dilation of the heart resulting in death. In carrying the casket he did not slip or stumble nor did it fall against him; his entire purpose was carried out in precisely the manner designed and intended by Rock. Under these circumstances it was held that Rock's death was not caused through accidental means.

Lehman v. Great Western Acc. Assoc., 155 Iowa 737, 42 L. R. A. (N. S.) 562, is a well considered case. There the policy insured plaintiff "against the effects of personal injury caused solely by external, violent and accidental means," and the question was whether disability from appendicitis caused by over exertion in bowling arose from accidental means within the terms

of the policy. In holding the plaintiff could not recover the court said:

"The act of bowling in itself was not an accidental means, for it was voluntary. The act in itself did not cause the appendicitis. There is no evidence tending to show that, without the intervening accidental result of swollen and strained muscles, causing the friction of the appendix by their irregular action, the disability complained of could have resulted. The accidental means, therefore, causing the disability was not the external and violent act of bowling, but the internal condition of swollen and strained muscles. Finally, it is to be borne in mind that in this case there is no evidence whatever of any slipping or falling, or of any straining of the muscles, other than the intentional strain put upon them in the voluntary and intentional act of bowling. Such a strain was not an accidental strain, and if it produced an unintentional result and consequent injury, nevertheless the resulting injury, and not the means producing it, was accidental."

To the same effect, see Appel v. Aetna L. Ins. Co., 86 App. Div. 83, 83 N. Y. S. 238, 180 N. Y. 514, 72 N. E. 1139.

After reviewing the cases the Supreme Court of Iowa, in the Lehman case, speaking through Judge McClain further said:

"In all of these cases we have recognized the necessity of proximate connection between some accidental means and the injurious result complained of; and according to the great weight of authority such proximate connection must appear. It is not sufficient that there be an accidental—that is, an unusual and unanticipated—result. The means must be accidental; that is, involuntary and unintended. Thus, in United States Mut. Acci. Asso. v. Barry, 131 U. S. 100, 33 L. Ed. 60, 9 Sup. Ct. Rep. 755, it was held that, 'If a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs, which produces the injury, then the injury has resulted through accidental means'; and the court sustained a recovery in that case for an injury following the voluntary jumping from a platform, on the ground that the evidence tended to show some unforeseen circumstances causing the injured per-

son to alight in a different position or way from that which he intended or expected. And this case is followed under quite similar circumstances and reasoning in Standard Life & Acci. Ins. Co. v. Schmaltz, 66 Ark. 588, 74 Am. St. Rep. 112, 53 S. W. 49, in which our case of Feder. v Iowa State Traveling Men's Asso., *supra*, was distinguished, on the ground that no unusual or unexpected exertion there appeared."

Smouse v. Iowa State Traveling Men's Assoc., 118 Iowa 436; Cobb v. Preferred Mut. Acc. Assoc., 96 Ga. 817, and Streeter v. Western Un. Mut. L. & A. Assoc., 65 Mich. 199, 8 Am. St. Rep. 882, are to the same effect.

In Smith v. Travelers Ins. Co., 219 Mass. 417, L.R. A. 1915B, 872, it was held that the death of the insured from spinal meningitis caused by the penetration of streptococcus germs into the brain as a result of snuffing through a nasal douche too violently was not caused by accidental means, the court saying:

"The deceased did exactly what he intended to do. This particular act of inhalation, though harder or more violent than usual, was not, so far as appears, harder or more violent than he intended it to be. There was no shock or surprise during the inhalation which made him draw a deeper breath than he intended to draw, nothing strange or unusual about the circumstances. The external act was exactly what he designed it to be, though it produced some internal consequences which he had not foreseen. Accordingly there was no bodily injury effected through a means which was both external and accidental. But it is only for a death resulting from injury effected through such means that the defendant is made responsible by the policy. It is not sufficient that the death or the illness that caused the death may have been an accidental result of the external cause, but that cause itself must have been, not only external and violent, but also accidental."

Many illustrative cases are collected in Stone v. Fidelity & Casualty Co., 133 Tenn. 672, Ann. Cas 1917A, 86, a case strikingly like the case at bar in its controlling facts. In that case the policy, like the one at bar, insured Stone "aganst bodily injury sustained through accidental means, and resulting directly, independently, and exclusively of all other causes, in immediate, continuance, and total disability." Stone contracted a cold while attending a football game in November, 1913, which resulted in lumbago. After medical treatment

and the debility resulting from a purgative, and while lying in bed, Stone had a paper brought, reached for it, and raised it suddenly above his head, when his strong blood pressure caused a rupture of the retina, destroying the sight of one eye. There as here the loss of sight was caused by a "clot of blood resting upon the nerve of the eye or in the retina," and it was claimed that the loss of sight resulted wholly from accidental means. It was held that Stone could not recover under his policy because, while the result was not foreseen, the cause that produced the result was not an accident, but an ordinary movement executed as intended. In the course of the opinion the court said:

"The general rule is that an injury is not produced by accidental means, within the meaning of this policy, where the injury is the natural result of an act or acts in which the insured intentionally engages. A person may do certain acts the result of which produces unforeseen consequences resulting in what is termed an accicent; yet it does not come within the terms of this contract. The policy does not insure against an injury that may be caused by a voluntary, natural, ordinary movement, executed exactly as was intended.

"Therefore, to determine the matter, we look not to the result merely, but to the means producing the result. It is not sufficient that the injury be unusual and unexpected, but the cause itself must have been unexpected and accidental. *In re* Scarr (1905) 1 K. B. 387, 2 British Rul. Cas. 358, 92 L. T. N. S. 128, 21 Times L. Rep. 173, 1 Ann. Cas. 787; Clidero' v. Scottish Accident Ins. Co. (1892), 19 R. 355, 29 Sc. L. R. 303; Smith v. Travelers' Ins. Co. (1914), 219 Mass. 147, 106 N. E. 607, L. R. A. 1915B, 872; Feder v. Iowa State Traveling Men's Assoc., 107 Ia. 538, 78 N. W. 252, 43 L. R. A. 693, 70 Am. St. Rep. 212; Shanberg v. Fidelity, etc. Co., 143 Fed. 651, affirmed in 158 Fed. 1, 85 C. C. A. 343, 19 L. R. A. (N. S.) 1206; Lehman v. Great Western Acc. Assoc., 155 Ia. 737, 133 N. W. 752, 42 L. R. A. (N. S.) 563; Smouse v. Iowa State, Traveling Men's Assoc., 118 Ia. 436, 92 N. W. 53; McCarthy v. Travelers' Ins. Co., 8 Biss. 362, 8 Ins. Law J. 208, 7 Reporter 486, 15 Fed. Cas. No. 8, 682; Niskern v. United Brotherhood of Carpenters, etc., 92 App. Div. 364, 87 N. Y. S. 640; Hastings v. Travelers' Ins. Co., 190 Fed. 258; Cobb v. Preferred Mut. Acc. Assoc., 96 Ga. 818, 22 S. E. 976; Travelers' Ins. Co. v. Selden, 78 Fed. 285, 42 U. S. App.

253, 24 C. C. A. 92; Southard v. Railway Pass. Assur. . Co., 34 Conn. 576, 22 Fed. Cas. No. 13, 182.

"Attention is especially directed to the very excellent notes on the subject in 42 L. R. A. (N. S.) 563, and 1 Ann. Cas. 787. These notes illustrate the subject by statements of the facts. In the foregoing cases no liability was found, because the injury was not produced by accidental means."

The note to the above case in Ann. Cas. 1917A, page 88, contains a collection of the cases upon the subject. See also annotation in 2 Br. Rul. Cas. 367.

As above stated there is no real contradiction in the. testimony in this case as to what caused the loss of plaintiff's eye, the three physicians agreeing that Salinger would not have lost his sight in the absence of his bodily condition caused by the clot in the blood vessels. Consequently, under the rule above announced his injury was not caused by accidental means within the terms of the policy.

In peremptorily instructing the jury to find for the defendant the circuit court ruled correctly.

Judgment affirmed.