## Huffman v. Commonwealth.

(Decided November, 29, 1921.)

### Appeal from Boyd Circuit Court.

1. Criminal Law—Misdemeanor—Trial of Defendant in His Absence. —Crim. Code, section 184, confers upon the circuit court authority to try, in his or her absence, a defendant under indictment for a misdemeanor, who, by previous service of its process or admission to bail, has been subjected to its jurisdiction.

2. Criminal Law—Trial of Defendant in His Absence—New Trial.— To authorize the granting of a new trial on the ground of accident or surprise preventing the presence of the defendant at the trial, it must be made to appear from satisfactory proof in support of the motion for the new trial that the accident or surprise was such an event or happening as could not have been avoided by the exercise on the defendant's part of the degree of care necessary to the exigency; and as such care was not shown to have been exercised by the defendant in this case, the action of the circuit court in refusing her a new trial on that ground was not error.

3. Criminal Law—Maintaining Bawdy House—Excessive Punishment.—As the offense of maintaining a disorderly (i. e., bawdy)

house is a misdemeanor at the common law and punishable thereunder by a fine in any amount or imprisonment in jail any length of time, or both, in the discretion of the jury, the infliction, by verdict of a jury and judgment of the court, upon a defendant convicted under an indictment charging that offense of a fine of $500.00 and confinement of one year in jail by way of punishment is not such excessive punishment as would authorize the granting of a new trial.

B. S. WILSON for appellant.

CHAS. I. DAWSON, Attorney General, JOHN F. COLDIRON and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, Maggie Huffman, was indicted, tried and convicted in the Boyd circuit court of the offense of conducting and maintaining a disorderly house, to-wit: a bawdy house, in the city of Ashland and her punishment fixed by verdict of a jury and judgment of the court at a fine of $500.00 and imprisonment of one year in the county jail. Complaining of the judgment and of the action of the circuit court in refusing her a new trial she has appealed.

The grounds filed in support of the motion for a new trial, and now urged for the reversal of the judgment of conviction, were and are: (1) That she was tried in her absence; (2) that the verdict is the result of accident and surprise, which ordinary prudence on her part could not prevent; (3) that the punishment inflicted is excessive; (4) that she is not guilty of the offense charged in the indictment; (5) that she did not have a fair trial or her day in court.

Grounds one and two will be considered together, as the absence of the appellant at the time of her trial, set forth in the first, would not, without satisfactory proof of the accident and surprise claimed in the second, have entitled her to the new trial asked of the court below. Section 184, Crim. Code, confers upon the circuit court complete authority to try, in his or her absence, a defendant under indictment therein for a misdemeanor, who, by previous service of its process or admission to bail, has been subjected to its jurisdiction. It will be found from an examination of the cases cited below and others not named that judgments of conviction in cases of misdemeanor, occurring in the absence of the parties charged, have, in numerous instances, been affirmed by this court.

Starkey v. Comth., 188 Ky. 40; Threlkeld v. Comth., 167 Ky. 615; Veal v. Comth., 162 Ky. 250; Truitt v. Comth., 177 Ky. 397; Long v. Comth., 177 Ky. 391. So it only remains to be determined whether the claim of accident and surprise contained in the second ground authorized the granting of a new trial. It is therefore necessary to consider the evidence contained in the affidavits filed by the appellant in support of this ground.

Before doing this, however, it should be stated that the indictment against the appellant was returned in the Boyd circuit court by the grand jury January 7, 1921, and on the same day a bench warrant was issued against her by order of the court and at once placed in the hands of the sheriff for execution; the warrant containing authority to that officer to allow her to give bail in the sum of $500.00 for her appearance in court to answer the charge in the indictment. Appellant was arrested under the bench warrant January 10, 1921, by the sheriff and delivered to the court, which, in appellant's presence and hearing, docketed the indictment against her and set the prosecution for trial January 19, 1921; thereupon, by her execution of the required bond with sufficient security and its acceptance by the court, appellant was admitted to bail in the sum of $500.00 and discharged from custody until January 19, 1921, the day fixed for her trial.

The court convened on January 19, 1921, at nine o'clock a. m., the customary hour, and, after the reading of its orders of the previous day, began the call for trial of that day's criminal docket. Among the cases called was the prosecution against appellant in question. The Commonwealth's attorney announced the readiness of the Commonwealth for trial, but the appellant, though duly called, failed to appear or answer in person or by attorney. After a delay of some minutes awaiting her coming, which did not result, a forfeiture of her bail bond was adjudged and the case, by order of the court, went to trial before a jury in the manner customarily and legally followed in cases of misdemeanor, in the absence of the defendant, the verdict declaring appellant guilty and fixing her punishment as previously stated.

The facts relating to the indictment, trial and conviction of the appellant as thus far stated fully appear from the records of the trial court and affidavit of the Commonwealth's attorney, and are not denied by her; and it is apparent from these undisputed facts that she was duly advised, in fact personally notified by the court, of the

day fixed for the trial of her case, and that she knew the hour of the convening of the court each day was nine o'clock a. m.   Indeed, it is not claimed by her, nor for her by her counsel, that the foregoing facts were not fully known to her, yet according to the admissions of her own affidavit and those of her witnesses, Dolly Adams and May Huffman, both inmates of her house, she made no preparation on the day her case was set for trial for leaving her home in the city of Ashland to attend the court in Catlettsburg, the county seat, five miles distant, until about or shortly after nine o'clock a. m., the hour at which she knew the court would convene.   The only preparation she then made was by dressing for the trip and ordering over the telephone a taxicab from Mundy's garage to carry her to Catlettsburg.  It further appears from appellant's affidavit and those of her two witnesses named, that the taxicab ordered by her did not get to her residence until a half hour or more after the order for it was made.   This is also shown by the affidavit of Mundy, from whom the taxicab was ordered, who testified for appellant that the order from her for it was received by him between nine and ten o'clock a. m., and that after receiving it he was delayed a half hour in reaching her home because of having to inflate the tires of the taxicab and fill the tank with gasoline, and that when he finally got to appellant's residence he found there a deputy sheriff and policeman who had arrived from Catlettsburg in an automobile in which they took appellant back to that city with them; hence his (Mundy's) taxicab was not used by her and was taken by him back to his garage.

It appears from the affidavit of Martin, the policeman who went with deputy sheriff Clark, that they went from Catlettsburg to appellant's residence in Ashland with a bench warrant or capias for her arrest, which was issued by the court after her trial that morning; that they got to her residence about ten o'clock a. m., and that they arrested her under the writ and carried her in their automobile to Catlettsburg and delivered her into the custody of the court.   Martin also testified that Mundy got to appellant's residence with his taxicab after their arrival there, but by appellant's direction returned to his garage.

It is stated in the affidavits of Mundy and others that there is a street or interurban railway from Ashland to Catlettsburg over which cars pass daily at intervals of only a few minutes, beginning early in the morning and

continuing until late at night, and knowing this as did the appellant and of the necessity for her presence in court at Catlettsburg as early as nine o'clock a. m., January 19, in readiness for the trial of her case, liable to be called at any time after that hour, it is passing strange that she did not make an earlier effort or use reasonable diligence to get to court either by rail or taxicab in time for her trial. Yet we nowhere find in the record any excuse for such lack of ordinary diligence. In none of the affidavits filed by her is there any showing that she could not have been as ready to start for Cattlettsburg at eight or eight-thirty o'clock as she claims she was at nine o'clock, or that she could not have ordered the taxicab at eight or eight-thirty o'clock instead of nine o'clock, or later, as she did. In truth, the facts disclosed by the numerous affidavits found in the record, instead of tending to excuse appellant's non-attendance at the trial of her case, conduce to prove her absence intentional and to create a suspicion that she did not order the taxicab of Mundy or make other preparation to go to Catlettsburg until informed by some one there of the result of her trial, and that the deputy sheriff and policeman were on their way or would immediately start for Ashland to effect her arrest. At any rate, the evidence fails to show that appellant could not with reasonable or ordinary diligence or effort have been present at her trial, and, in greater degree, fails to show the occurrence of any accident by which she could have been surprised or prevented from attending same.

In 1 Cyc. 227, the word "accident" is thus defined: "In its most commonly accepted meaning the word 'accident' denotes an event that takes place without one's foresight or expectation; an event which proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected; chance, casualty or contingency."

Manifestly, what appellant here claims to have been an accident, viz.: the delay in the arrival of the taxicab ordered by her, was not an accident that relieved her of the duty to be present at her trial, as it could have been prevented by an earlier order from her, or by her going by railway to Catlettsburg in time for the trial. An accident, to excuse the appellant from the performance of a known duty to attend her trial, must have been such an event as could not have been avoided by the use on her

part of the degree of care necessary to the exigency, and, as we have seen, such care obviously was not used by her. Hence the trial court properly held that the alleged accident did not excuse her absence at the trial.

Appellant's claim of having employed an attorney to represent her on the trial furnished no ground for a new trial. As it does not appear from her affidavit, or an affidavit of the attorney, that he could not conduct her defense in her absence or that he had, or could have arranged, to delay the trial until she could get to court; furthermore, in the absence of proof of some good cause for his absence at the trial, such absence constituted negligence on his part, which under the circumstances must be imputed to her.

The punishment inflicted upon appellant by the verdict and judgment is not, as claimed in her third ground for a new trial, excessive. The offense of which she was convicted is one solely cognizable at the common law and the punishment prescribed therefor by the common law is a fine in any amount and imprisonment in jail any length of time, or by both, in the discretion of the jury. Therefore, in view of the character of the offense charged and the far greater punishment that might have been imposed, that inflicted cannot be regarded excessive.

The appellant's claim of not guilty, asserted by her fourth ground for a new trial, finds no support save that given by her own affidavit and those of two inmates of her house; and if it were here proper to go into the question of her guilt or innocence, it is sufficient to say that it appears from the affidavits of the head of the board of health of Ashland, a physician, the chief of police, and others, including two former inmates of appellant's house, that the reputation of her house for years has been notorious as a disorderly bawdy house, where persons of lewd reputation of both sexes constantly congregate and reside, who engage in sexual intercourse and other immoral conduct; and that from appellant's house, venereal diseases have been spread throughout the city of Ashland and vicinity.

Appellant's fifth complaint, to the effect that she did not have a fair trial, is unsupported by anything appearing in the record. As the careful examination we have given the record convinces us that the action of the circuit court in overruling the appellant's motion for a new trial was not an abuse of its discretion and the judgment appealed from is free from error, it must be and is affirmed.