## Donohue v. Washington Nat. Ins. Co.

(Decided April 16, 1935.)

JULIUS LEIBSON and SAMUEL LEIBSON for appellant.

LUKINS & JONES for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

This is an action on an accident insurance policy which, among other things, provides for payment of weekly indemnity for a period not exceeding 26 weeks, for "injuries sustained solely through external, violent

and accidental means, independent of all other causes,'' which ''immediately and continuously totally disables the insured from doing any work of any nature.''

In his petition the plaintiff, who is appellant here, claims to have sustained injuries solely through external, violent, and accidental means which wholly and continuously disabled him for a period of 26 weeks. In describing the way and manner in which the alleged injury occurred, the petition follows substantially, if not literally, the quoted terms of the provisions of the policy.

At the close of plaintiff's evidence, the court sustained defendant's motion for a peremptory instruction, and, from a judgment conforming to the directed verdict, plaintiff prosecutes this appeal.

On June 20, 1933, appellant, who was engaged in selling oil and gasoline and making deliveries from a truck, attempted to pick up from the ground a can of oil weighing 40 pounds. Appellant testified that, when he lifted the can, he was stricken with such a severe pain in the left hip that he dropped the can and fell to the ground, striking on that hip; that, when he lifted the can, he was in a sort of a twist. In reply to a question by a juror as to the character of pain, he replied:

> ''Just a quick, severe catch. It seemed to me apparently like you get a rag and tear it like that— the sound of the tear of a rag. That is the way it felt in my hip at the time.''

He stated that the pain was more severe after the fall; that the following day he noticed a bruised place on his hip, and this seemed to disappear within a few days, but reappeared some time afterward. When asked what was the cause of his disability, he responded, ''I think the lift, the strain and the fall.''

The physician who treated appellant testified that in his determination as to the cause of appellant's disability he was compelled to base his opinion on the history of the case as given by the patient. He did, however, indicate there was a damage to the nerves in that hip and that he attributed appellant's disability to the injury complained of. Otherwise his evidence throws little, if any, light on the questions to be determined. The evidence of appellant and his physician was sufficient to sustain the allegation of the petition as to the extent and duration of the disability.

It is contended by appellant that there was sufficient evidence to show that he suffered an accident within the meaning of the policy and that the injury resulting was sustained solely through external, violent, and accidental means, independent of all other causes, and therefore the case should have gone to the jury. On the other hand, counsel for appellee maintain that, if appellant was in fact injured, his injuries resulted in an ordinary act in which he was intentionally engaged, and that in such circumstances the injury is not produced or sustained by accidental means within the meaning of the policy, and there can be no recovery thereunder. As supporting this theory, Salinger v. Fidelity & Casualty Co. of N. Y. 178 Ky. 369, 198 S. W. 1163, 1164, L. R. A. 1918C, 101; Bahre v. Travelers' Protective Ass'n, 211 Ky. 435, 436, 277 S. W. 467, 468, and text authority and a number of cases from foreign jurisdictions are cited.

An accident in its commonly accepted meaning and as used in insurance contracts is "an event that takes place without one's foresight or expectation. An undesigned, sudden and unexpected event, * * * happening by chance or unexpectedly, taking place not according to the usual course of things." "An event which proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected; chance, casualty or contingency." Pack v. Prudential Casualty Co., 170 Ky. 47, 185 S. W. 496, 498, L. R. A. 1916E, 952; Huffman v. Commonwealth, 193 Ky. 79, 234 S. W. 962, 964. It is therefore apparent that appellant did suffer an "accident" within the commonly accepted meaning and application of that term. So it only remains to be determined whether the accident was suffered in a way and manner to bring it within the terms and coverage of the policy.

In the Salinger Case, supra, which has been widely quoted, it appears that Salinger, who was a merchant, held a policy insuring against injury sustained through accidental means and resulting directly, independently, and exclusively of all other causes. While lifting a bundle of boxes weighing about 24 pounds to a shelf above his head, he found that he could not distinctly see the numbers on the boxes, and it developed that he had lost the sight of one of his eyes. He was in good health and suffered no pain. He sought recovery on the ground that he had lost his sight through accidental means within the terms and meaning of the policy. The answer, in

addition to a traverse of the petition; affirmatively alleged that he was afflicted with embolus, which disease and his bodily condition resulting therefrom were the causes of the loss of his eye. Salinger testified that he lost his eye at the time and in the manner above stated. Three physicians who testified were in agreement that he lost his eye from embolus, which in common parlance is a clot in the blood vessels, and that it was brought about by his bodily condition, and it would not have been possible for him to lose his sight by a slight exertion in lifting the boxes independently of his bodily infirmity. After referring to the pleadings and the foregoing matters appearing in evidence, the opinion says:

> "So, the question for decision is reduced to this proposition, Does an intentional exertion constitute 'accidental means' of injury within the provision of the policy?"

The opinion then cites and quotes from cases from other jurisdictions indicating a negative answer to the question, and following substantially the rule as stated in 1 C. J. p. 426, that:

> "If a result is such as follows from ordinary means employed voluntarily and in a not unusual or unexpected way, it cannot be called a result effected by accidental means."

The opinion, however, sums up with this conclusion:

> "As above stated there is no real contradiction in the testimony in this case as to what caused the loss of plaintiff's eye, the three physicians agreeing that Salinger would not have lost his sight in the absence of his bodily condition caused by the clot in the blood vessels. Consequently, under the rule above announced, his injury was not caused by accidental means within the terms of the policy."

In the Bahre Case, cited by counsel for appellant, the insured, while riding over a rough road in an automobile, claimed to have been thrown against the side of the car several times, and on one of these occasions his leg struck the handle on the door, and on the rebound the calf of his leg struck the seat causing him some pain. This occurred on May 30 and no serious trouble developed until June 3, when he called a physician. On June 7 or 8 the leg commenced to swell, and for the first

time the physician noticed that it was discolored. The opinion quoted the rule referred to in the Salinger Case to the effect that an injury is not produced by accidental means within the meaning of an insurance policy where it is the direct, though unexpected, result of the act in which insured is voluntarily engaged. The policy, among other things, provided that there will be no liability for injury "of which there are no visible marks upon the body." It is pointed out that there was no time assigned for the accident, no abrasion, bruise, or external visible mark to indicate an injury for more than a week, etc. After discussing the evidence to show connection between the injury claimed and the alleged accident or accidental means which caused it, it is said:

> "It thus appears that there was no evidence upon this issue authorizing a verdict in favor of the plaintiff. At most it is speculative and it is well settled that a jury is not permitted to speculate upon their verdict."

It will therefore be seen that the case before us in most material aspects is quite different from either the Salinger Case or the Bahre Case, in that appellant had never had any disease or trouble with his hip, and he connects his injury directly with the lifting of the can and the fall occasioned thereby. Neither the Salinger Case nor the Bahre Case is rested on the theory that the insured was voluntarily and intentionally doing the thing claimed to have caused the injury, although that principle is referred to in both opinions. The opinion in the former was based on the theory that the injury resulted from disease and in the latter that evidence was not sufficient to connect the injury with the causes from which it was claimed it arose.

We find the general trend of authority to be as stated in the case of United States Mutual Accident Association v. Barry, 131 U. S. 100, 9 S. Ct. 755, 762, 33 L. Ed. 60, "that if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted through accidental means."

In the latter case, Barry and two associates jumped from a platform five feet in height to the ground. The

two associates jumped safely and without suffering any ill results. Barry, however, apparently sustained an injury in the jump, and immediately became ill and vomited, was unable to retain anything on his stomach, passed nothing but decomposed blood and mucous, and died about 9 days thereafter. The widow recovered under a policy with provisions similar to the one under consideration here, and the judgment was affirmed. It was held that the court properly instructed the jury that "the term 'accidental' was used in the policy as its ordinary, popular sense meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things;' or not as expected." That case, like numerous other cases, held that, if insured died of some disease not necessarily resulting from the original injury, then the insurer was not liable under the terms of its policy, but, if the insured received an internal injury not produced by the disease, and thereby caused his death, then the injury was the approximate cause of his death.

In the case of Mutual Life Insurance Co. of N. Y. v. Dodge (C. C. A.) 11 F. (2d) 486, 488, 59 A. L. R. 1290, the widow of insured as beneficiary recovered under a provision in a policy providing for double indemnity, if the death of the insured resulted from injury sustained solely through external, violent, or accidental means. Dr. Dodge died as the result of the local administration of novocain preliminary to an operation for the removal of his tonsils. He was in good health and had no disease or infirmity except the diseased condition of his tonsils which it was admitted did not contribute to his death. He had observed other physicians use novocain in operations, and knew it was to be used as a local anesthetic in his case, and it was applied in the usual manner. It was established by the evidence that novocain is ordinarily absolutely harmless, but that it proved fatal to Dr. Dodge, because, unknown to himself and to the operating physician, he had an "idiosyncrasy" or "hypersusceptibility" to the drug, which experts testified was not an infirmity or disease, but merely a peculiarity of the individual which could not be discovered by tests or examination. The opinion, after a review of the evidence, says:

"We think that not only was the death of insured an 'accidental death,' but that it was also a

death caused by 'accidental means,' within the meaning of the double indemnity clause.

" 'Accidental' is defined in Webster's Dictionary as 'happening by chance, or unexpectedly; taking place not according to the usual course of things; casual; fortuitous; as an accidental visit.' And in defining the term 'accidental means' Corpus Juris says: 'Where the effect is not the natural and probable consequence of the means which produce it—an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of the means, or an effect which the actor did not intend to produce and which he cannot be charged with a design of producing—it is produced by accidental means.' 1 C. J. 427.

"Cooley's Briefs on Insurance, at page 3156, gives practically the same definition. Judge Sanborn, speaking for the Circuit Court of Appeals of the eighth circuit, says: 'An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds. On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follows and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, * * * is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means.' Western Com. Travelers' Ass'n v. Smith, 85 F. 401, 29 C. C. A. 223, 40 L. R. A. 653, approved in Ætna [Life] Ins. Co. v. Brand [C. C. A. 2d] 265 F. 6 [13 A. L. R. 657].

"Mr. Justice Blatchford, speaking for the Supreme Court of the United States, says: 'If a result is such as follows from ordinary means, volun-

tarily employed, in a not unusual or expected way, it cannot be called a result effected by accidental means; but if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs, which produces the injury, then the injury has resulted through accidental means.' [United States] Mutual Accident Ass'n v. Barry, 9 S. Ct. 755, 131 U. S. 100, 33 L. Ed. 60. * * *

"It is true that the doctor intended to apply the drug and insured intended that he should apply it; but neither intended to apply it to a body possessed of the idiosyncrasy. . Death resulted because of their applying the drug in ignorance of this peculiarity in the object acted upon, and was a result not calculated nor intended, and one which could not reasonably have been foreseen."

There is nothing here to indicate that a disease or infirmity of body caused or contributed to appellant's injuries as there was in the Salinger and Bahre Cases. In Silverstein v. Metropolitan Life Insurance Co., 254 N. Y. 81, 171 N. E. 914, and Leland v. Order of U. C. Travelers, 233 Mass. 558, 124 N. E. 517, and a number of other cases, it is indicated that, for disease or infirmity to exclude the effect of an accident from the coverage of a policy insuring against injury by accidental means, the disease or infirmity must be such as would be characterized as a disease or infirmity in the common speech of man, that, if there be a frail general condition so that the powers of resistance may be easily overcome, or merely a tendency to disease which is started up and made operative whereby injury results, there may be recovery, even though the accident would not have caused that effect upon a healthy person in a normal state; and accident policies are not accepted by the ordinary man with the idea and understanding that their coverage extends alone to perfection in health and vigor, since Apollonian perfection and Herculean strength exist only in the realm of mythology.

This court in Woods v. Provident L. & A. Ins. Co., 240 Ky. 398, 42 S. W. (2d) 499, quotes with approval that part of the opinion in Western Commercial Travelers' Ass'n v. Smith (C. C. A.) 85 F. 401, 40 L. R. A. 653, quoted in Mutual Life Insurance Co. of N. ·Y. v. Dodge, supra, and hereinbefore set out. And it has been approved and followed literally or in substance and

effect in numerous other cases. Continental Casualty Co. v. Willis (C. C. A.) 28 F. (2d) 707, 61 A. L. R. 1069; Zurich General A. & L. Ins. Co. v. Flickinger (C. C. A.) 33 F. (2d) 853, 68 A. L. R. 161; Norris v. New York Life Ins. Co. (C. C. A.) 49 F. (2d) 62; Schleicher v. General Accident F. & L. Assur. Corp., 240 Ill. App. 247; Hoosier Casualty Co. v. Royster, 196 Ind. 629, 149 N. E. 164, 42 A. L. R. 239; Ashley v. Agricultural Life Ins. Co., 241 Mich. 441, 217 N. W. 27, 58 A. L. R. 1208; Arquin v. Industrial Com., 349 Ill. 220, 181 N. E. 613; Wright v. Order of U. C. Travelers, 188 Mo. App. 457, 174 S. W. 833.

The words "accident," "accidental," and "accidental means," as used in insurance policies, have never acquired a technical meaning in law, and must be interpreted according to the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured. Bennett v. Travelers' Protective Ass'n, 123 Neb. 31, 241 N. W. 781; Mutual Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102; Stipcich v. Metropolitan Life Ins. Co., 277 U. S. 311, 48 S. Ct. 512, 72 L. Ed. 895; Silverstein v. Metropolitan Life Ins. Co., supra; Lickleider v. Iowa Traveling Men's Ass'n, 184 Iowa, 423, 166 N. W. 363, 168 N. W. 884, 3 A. L. R. 1295.

So interpreted, and with the authorities hereinbefore cited as a guide, it is apparent, and we are constrained to hold, that the effect in this instance as indicated by the evidence was not the natural or probable consequences of the means, the act or course of action which produced it; it was unexpected unforeseen, extraordinary, and tragically disproportionate to a trivial cause; and, although the result of a voluntary act of the insured, such act was manifestly not dangerous nor ordinarily followed by serious consequences. In other words, and to paraphrase the language of United States Mutual Accident Ass'n v. Barry, as further quoted in Woods v. Provident L. & A. Insurance Co., supra, it is made to appear that in the act which preceded the injury something unforeseen, unexpected, and unusual occurred which produced the injury, and therefore the injury resulted from accident sustained through accidental means. Our conclusion is that the evidence was sufficient to take the case to the jury.

620

Wherefore the judgment is reversed and the cause remanded for proceedings in conformity with this opinion.

Whole court sitting.

Stites, J., dissenting.