# Mutual Benefit Health & Accident Ass'n v. Blanton.

November 21, 1947.

James W. Turner, Judge.

R. Lee Blackwell and Bullitt & Middleton for appellant.

M. O. Wheeler and Wheeler & Wheeler for appellee.

OPINION OF THE COURT BY CLAY, COMMISSIONER—Reversing.

Appellee, beneficiary under an accident insurance policy, recovered a judgment for $2,500 against appellant upon the death of her husband, Walter Blanton. On this appeal appellant urges that the trial court erred in failing to: (1) direct a verdict for it, (2) exclude alleged incompetent testimony of deceased's physician, and (3) declare a mistrial for certain conduct of appellee's counsel.

The policy upon which this suit was based insured appellee's husband against loss of life "resulting directly and independently of all other causes, from bodily injuries sustained during any term of this policy, through purely Accidental Means * * *." The death benefit provided was $2,500, which appellee recovered. There is no substantial dispute concerning the facts which caused Blanton's death. He died as the result of a "heart condition" four days after he had become exhausted while working.

Blanton was fifty-six years of age, a stout, able bodied man, and was apparently in good health. On February 15, 1946, he was engaged in his regular employment on a drilling rig near Kermit, West Virginia. The work involved was heavy manual labor.

According to one Bryan Cantrell, the only eye witness to the incident which led to Blanton's death, the following took place: The two men were engaged in breaking a joint and removing a bit in the drilling rig. In order to accomplish this normal operation, it was necessary to use two wrenches, one of which was stationary and secured the shaft, and the other known as a "jack" was operated to unscrew the bit from the shaft. Attached to this jack was a lever which is moved up

and down and by a ratchet mechanism unscrews the bit. It appears that the bit was "stuck and was hard to break loose." Blanton had the lever on his left shoulder, and was pushing upwards to raise it. While so exerting himself "he just let loose and walked over to one side and stretched his arm out and rubbed himself that way and said, 'Bryan, son, I am knocked out and will have to go in.'" While performing this operation Blanton "had put forth all the energy that was in him." The operation was performed in the routine manner, although Blanton was apparently exerting himself to the utmost.

Soon after the above incident, Blanton went home, did not do any work thereafter, and died within a few days.

He was examined by a physician the evening he quit work, who found some bruises on his left shoulder and "probably on his back." The examination disclosed a systolic murmur of the heart, and Blanton was advised to go to bed in the hospital, as the heart condition might probably result in heart failure. The physician concluded that "Blanton died from this heart condition brought on by his injury." This witness further testified that the bruises he observed could have been caused by heavy pressure on the affected areas.

In his testimony the physician stated: "that was the history of the case; that he fell a considerable distance." This was not responsive to the question asked and was objected to by appellant on the ground that it was hearsay. This witness also testified over the objection of appellant to the effect that the heart failure had been brought about by "this injury."

We will first take up the question of whether or not appellant was entitled to a directed verdict because of appellee's failure to prove that Blanton's death resulted from bodily injury sustained "through purely Accidental Means." Appellee is bound by the terms of the insurance policy sued on. It does not insure against death occurring unexpectedly nor death occurring from some unanticipated condition. It is not an ordinary life insurance policy. Appellant only agrees to pay the face of the policy where death ensues from bodily injuries sustained in an accidental way.

We had a somewhat similar situation in Salinger v. Fidelity & Casualty Company of New York, 178 Ky. 369, 198 S. W. 1163, L. R. A. 1918C, 101. In that case the plaintiff was lifting a bundle of boxes to a shelf higher than his head. While so exerting himself he became partially blinded. It appeared that his disability was caused from embolus, or a floating clot which lodged in the artery of his eye. The physicians who testified agreed that the exertion on the part of the plaintiff cooperated with his bodily condition to cause the loss of his eyesight. The court then stated, page 371 of 178 Ky., page 1164 of 198 S. W.:

"So the question for decision is reduced to this proposition, Does an intentional exertion constitute 'accidental means' of injury within the provision of the policy? It may be treated as established by the great weight of authority that an injury is not produced by accidental means within the terms of an accident insurance policy, where it is the direct, though unexpected, result of an ordinary act in which the insured intentionally engages."

The opinion then refers to a number of comparable cases from other jurisdictions. An insurance company was held not liable on an "accidental means" policy where the insured died from a rupture of the heart, the inciting cause of which was overexertion while assisting in carrying a heavy door. Shanberg v. Fidelity & Casualty Co., 2 Cir., 158 F. 1, 85 C. C. A. 343, 19 L. R. A., N. S., 1206. The death of the insured was held not to have been caused by accidental means where the insured died of dilation of the heart following his overexertion when he attempted to carry a heavy casket. Rock v. Travelers' Ins. Co., 172 Cal. 462, 156 P. 1029, L. R. A. 1916E, 1196. Where the insured overexerted himself in bowling, it was decided that resulting appendicitis was not caused by accidental means. Lehman v. Great Western Acc. Assoc., 155 Iowa 737, 133 N. W. 752, 42 L. R. A., N. S., 562.

The opinion further quotes from another case referred to therein as follows, page 375 of 178 Ky., page 1165 of 198 S. W.:

"The general rule is that an injury is not produced by accidental means, within the meaning of this policy,

where the injury is the natural result of an act or acts in which the insured intentionally engages. A person may do certain acts the result of which produces unforeseen consequences resulting in what is termed an accident; yet it does not come within the terms of this contract. The policy does not insure against an injury that may be caused by a voluntary, natural, ordinary movement, executed exactly as was intended.

"Therefore, to determine the matter, we look, not to the result merely, but to the means producing the result. It is not sufficient that the injury be unusual and unexpected, but the cause itself must have been unexpected and accidental."

The court concluded that defendant had properly been given a peremptory instruction.

In a recent case from the state of Washington, Evans v. Metropolitan Life Ins. Co., 26 Wash. 2d 594, 174 P. 2d 961, the Salinger case was cited with approval. It there appeared that the insured overexerted himself while pushing an automobile which brought on a heart attack resulting in his death. The court stated, page 976 of 174 P. 2d:

"In this case the pushing of the automobile was the means by which the injury was caused, and there was nothing unforeseen, involuntary or unexpected in the act in which the insured was engaged from the time he started his car by pushing his foot on the pavement until he collapsed. There was no stumbling, slipping or falling in his movements. He engaged in pushing his automobile for his own convenience. He encountered no obstacle in doing so. He accomplished just what he intended to in the way he intended to, and in the free exercise of his choice. No accident of any kind interfered with his movements, or for an instant relaxed his self-control. There was an unforeseen result of the insured's deliberate actions. The result of any action, however, cannot be considered in the determination of the question of whether there was an accident.

"The conclusion we must reach from a consideration of all the cited cases is that accident is never present when a deliberate act is performed, unless some additional, unexpected, independent, and unforeseen hap-

pening occurs which produces or brings about the result of injury or death.''

While apparent confusion may be found in some of the authorities, we must bear in mind the difference between an unexpected or unforeseen result which might be called accidental and the unexpected or unforeseen preceding occurrence which causes the result. National Life & Accident Insurance Co. v. Jones, 260 Ky. 404, 409, 86 S. W. 2d 139. In the case before us, the insured was performing an act in the normal and routine manner. He overexerted himself. As far as the direct evidence shows, there was no slip or mishap or unforeseen development which took place at any time in the performance of the act. The breaking of the joint was performed precisely as intended. We cannot then say that the death of Blanton, even though unforeseen and unexpected, resulted directly from injuries sustained through accidental means. A verdict, therefore, should have been directed for appellant.

Appellee urges that the physician's testimony regarding a ''fall'' and ''this injury'' proved an accident. Appellant objected to this evidence as incompetent. While there is a substantial question about its competency, we do not deem it necesssary to pass on objections made by appellant.

The suggestion that Blanton had fallen or that he actually received some accidental injury is at most either hearsay or an opinion. Assuming it to be admissible as an exception to the hearsay rule because a part of the history of the case, its probative value is extinguished in the light of direct and positive evidence, given by the only eye witness, concerining the actual event which led to Blanton's death. If this testimony constitutes an opinion of the physician, it must likewise fall for lack of any substantial proof upon which such opinion could be based.

The testimony of this physician does not have sufficient quality to make out a case for appellee. Adequate evidence must be that type which will shore up, or sustain, or uphold staunchly a requested verdict. Whalen's Adm'x v. Sundell et al., 303 Ky. 752, 199 S. W. 2d 426. The unresponsive reference to a ''fall'' and the vague reference to an ''injury'' do not constitute

the character of proof sufficient to sustain a verdict for appellee. This is especially true in the light of positive and credible evidence which repudiates appellee's theory. In spite of this testimony, therefore, appellant was entitled to a directed verdict.

In view of what we have said above, it is unnecessary to discuss appellant's motion to set aside the swearing of the jury and to declare a mistrial.

The judgment is reversed for proceedings consistent herewith.