## TRAVELERS INS. CO. v. WITT.

Court of Appeals of Kentucky.
May 29, 1953.

Petition for Rehearing Withdrawn
Oct. 5, 1953.

Grannis Bach and Steve C. Bach, Jackson, for appellant.

Williams & Allen, Jackson, for appellee.

MOREMEN, Justice.

Appellee, Earl O. Witt, was awarded judgment by the circuit court in an action based upon a policy issued to him by appellant, The Travelers Insurance Company. The policy, which was issued in the year 1929, insured appellee against loss resulting from bodily injuries effected directly through external, violent or accidental means, as limited and provided in the policy. The provision, which requires discussion here and which pertains to cases where total loss of time at work is involved, reads:

"Or, if such injuries independently and exclusively of all other causes shall wholly and continuously disable the insured from the date of accident from engaging in any occupation or employment for wage or profit, the Company will pay, so long as the insured lives and suffers such total disability, monthly indemnity at the rate hereinbefore specified."

Appellant complains that sufficient facts were not alleged to present the substance of the above quoted paragraph, and, therefore, a demurrer to the petition should have been sustained. The apropos portion of the petition reads:

"He says that on the 5th day of November, 1949, at a time the premium had been paid by him and accepted by the defendant and while said accident policy was in force and effect, while employed by Louisville & Nashville Railroad, he, through external and violent means accidently received a bodi-

ly injury which has disabled him from said time and will continue to disable him for the duration of his life from engaging in an employment or occupation for wage or profit and that said bodily injury was and is independent of all other causes."

That allegation was sufficient to apprise appellant of the issue it would be required to meet. Appellant argues, "The plaintiff does not allege that his disability was caused 'wholly' by the injury he received and 'independently and exclusively of all other causes.'" As we understand the language used in the policy, the adverb, "wholly" modifies the word, "disable," and it is clear from the averments of the petition that the assured was entirely incapacitated.

Appellee had worked for the railroad as a fireman and engineer for more than thirty years, and, during this time, it was his duty and habit to take a water cooler from the cab of the engine, fill it with ice and water, and then replace it in the cab. He stated that on November 5, 1949, while he was lifting the filled cooler in order to put it on the engine, he felt a strain in the region of his right groin which was accompanied with pain, and a hernia resulted. He continued to work the balance of that day but, since the appearance of the rupture, he has been unable to perform any labor, although he appears to be skilled in many types of mechanical craft.

Appellant contends that appellee's injury was not the result of an "accident" according to the meaning of the word as used in the policy because, it is insisted, the mishap was not produced by accidental means but was the natural, if unforeseen, result of an act in which appellee had intentionally engaged, and relies upon Salinger v. Fidelity & Casualty Co. of New York, 178 Ky. 369, 198 S.W. 1163, L.R.A.1918C, 101; and Mutual Benefit Health & Accident Ass'n v. Blanton, 306 Ky. 16, 206 S.W.2d 70. In the opinions in both of the foregoing cases may be found language which, in effect, states the rule appellant requests us to apply in this case, but it is also true that in each of the foregoing cases the disability or death resulted from a disease or a condition that existed before the event which was claimed to be an accident. In the Salinger case, the insured claimed that he was injured while in the act of lifting a bundle of boxes, weighing about twenty-four pounds, to a shelf somewhat higher than his head. He realized he was injured when he noticed that he could not distinctly see the numbers on the boxes. However, in the penultimate paragraph of the opinion, it was stated [178 Ky. 369, 198 S.W. 1165]: "there is no real contradiction in the testimony in this case as to what caused the loss of plaintiff's eye, the three physicians agreeing that Salinger would not have lost his sight in the absence of his bodily condition caused by the clot in the blood vessels." At most, Salinger merely discovered, while in the act of lifting a box during his usual course of work, that he had been disabled by a disease.

In the Blanton case, the facts disclosed that Blanton over-exerted himself at his work in an operation performed in a routine manner, but the decisive fact in the case is that "Blanton died from this heart condition brought on by his injury." [306 Ky. 16, 206 S.W.2d 71.]

In Donohue v. Washington National Insurance Co., 259 Ky. 611, 82 S.W.2d 780, where the insured sustained injuries to his hip, and subsequent disability, while lifting a forty pound can of oil onto a truck, and was stricken with a severe pain in the hip which caused him to fall to the ground on that hip, it was pointed out that the words, "accident," "accidental," and "accidental means," as used in insurance policies, had never acquired a technical definition in law and that the words must be interpreted according to the usage of the average man. Recovery was permitted.

In Pack v. Prudential Casualty Co., 170 Ky. 47, 185 S.W. 496, 499, L.R.A.1916E, 952, it was held that, although insured was voluntarily engaged in working in the sunlight, a sunstroke he suffered was nevertheless the result of an accident he would not have reasonably foreseen or anticipated, and the court said:

"The very purpose of accident insurance is to protect the insured against accidents that occur when he

is going about his business or attending to his work or affairs in the usual way without any thought of being injured or killed, and when there is no probability, in the ordinary course of human experience, that he will meet with accident or death. The reason why men secure accident insurance is to protect them against unforeseen and unexpected accidents that may happen in the ordinary course of their lives, and when they are pursuing in the usual way their daily vocations, or doing in the ordinary way the things that men do in the common, everyday affairs of life. Nearly all accidents happen when people are going about their business in the usual way and are voluntarily doing the things before them to do."

In the instant case, it would be necessary first to attribute to appellee a tremendous capacity of clairvoyance before it might properly be said that he should have perceived that this simple act, which he had performed without mishap for several decades, would injure him. We believe that the policy covered this accident.

Appellant finally urges as reason for reversal that appellee failed to establish that plaintiff's injury wholly, independently, and exclusively of all other causes, caused his alleged total disability. We have heretofore pointed out that we believe the adverb, "wholly," as used in the policy, modifies the word, "disabled," and will confine this discussion to whether or not appellee's injury independently caused the disability. The policy of insurance discloses that appellee was born on June 14, 1890, so he was no longer young at the time the accident occurred. He suffered from several, not uncommon, ailments—hypertension, diabetes, and hemorrhoids. However, the evidence showed that for more than thirty years he had worked for the railway company during which time, no doubt, he had suffered from minor diseases. The deposition of Dr. W. H. Pennington was read in behalf of appellant in which he made this statement:

"Although I was not authorized to do so, I was asked to examine Mr. Witt by the insurance company and, while I was not authorized to advise him, I felt that it was my duty to say to him that he should have his hernia repaired, that his diabetes could be controlled and his high blood pressure could temporarily, at least, be relieved. He could be operated on and, in six to eight weeks, he could return to any hard work that he cared to do."

We think it plain that if he worked continuously before the accident and if a successful operation for hernia would make him capable of doing any hard work he cared to do, surely he is disabled independently of all other causes by the hernia.

Judgment affirmed.