**W. Van Meter ALFORD,
Plaintiff-Appellee,**

v.

**CONTINENTAL CASUALTY Company,
Defendant-Appellant (two cases).**

**W. Van Meter ALFORD,
Plaintiff-Appellee-Cross-Appellant,**

v.

**CONTINENTAL CASUALTY
COMPANY,
Defendant-Appellant-Cross-Appellee.**

**Nos. 75–1019, 75–1020.**

United States Court of Appeals,
Sixth Circuit.

Argued June 3, 1975.

Decided Oct. 6, 1975.

William H. McCann, Brown, Sledd & McCann, Lexington, Ky., for Continental Cas. Co.

R. J. Turley, Turley, Savage & Moore, Lexington, Ky., for W. Van Meter Alford.

Before PHILLIPS, Chief Judge, and WEICK and EDWARDS, Circuit Judges.

PHILLIPS, Chief Judge.

In May 1972, William Van Meter Alford underwent surgery for the removal of a small tumor in the lacrimal gland near his left eye. The operation was performed skillfully by a competent surgeon, and there is no allegation of medical negligence. Two days later the bandages were removed, and it was discovered that Mr. Alford had lost sight in his left eye. The surgeon was surprised at this unfortunate and unusual development, and none of the physicians involved in the case was able to explain definitely the cause of Mr. Alford's partial blindness. The medical testimony indicated that the loss of vision probably resulted from a temporary occlusion or spasm of the central retinal artery, but the cause of the occlusion is unknown. The physicians saw no causal relationship between the presence of the tumor and the occlusion, but they guessed that Mr. Alford would not have lost vision in his left eye if the operation had not been performed.

At the time of the surgery, Mr. Alford was insured under an accidental death and dismemberment insurance policy issued by Continental Casualty Company. The policy provided that the insured would receive $37,500 for the loss of sight in one eye resulting from "bodily injury caused by an accident." Mr. Alford filed a timely claim under the policy, stating that his loss was the result of an accidental injury during surgery. After processing and investigating the claim, Continental concluded that Mr. Alford's loss of vision was not the result of an accident within the meaning of the policy. Accordingly, Continental refused payment of the claim.

Subsequent negotiations were fruitless, and Mr. Alford eventually filed suit against Continental in Fayette Circuit Court, Fayette County, Kentucky, seeking recovery of the $37,500 allegedly due under the insurance contract. In addition, the complaint sought compensatory and punitive damages on the ground that Continental's refusal to pay Mr. Alford's claim was oppressive and in bad faith and therefore tortious. Continental removed the action to the District Court on the basis of diversity jurisdiction, and the case came on for trial before the late District Judge Mac Swinford. At the close of the evidence, both parties moved for a directed verdict. Judge Swinford dismissed the tort claim and submitted the contract claim to the jury, which found in favor of the plaintiff. Accordingly, the court entered judgment against Continental in the amount of $37,500, plus interest and costs. Both parties have appealed to this court.

In Continental's appeal, it argues that as a matter of Kentucky law plaintiff's evidence was insufficient to create a jury question on the issue of whether Mr. Alford's loss of sight was accidental within the meaning of the insurance policy. The court's denial of Continental's

motion for a directed verdict and its instructions to the jury on the meaning of the word "accident" were based largely on *Donohue v. Washington National Insurance Co.*, 259 Ky. 611, 82 S.W.2d 780 (1935). In this case, the insured was stricken with a sharp pain in his hip while lifting a large can of oil. The pain caused him to fall on the afflicted hip, and the injury resulted in a substantial period of disability. The attending physician apparently was unable to identify with certainty the cause of the initial pain. The court held that the trial judge should have submitted to the jury the question of whether the insured's injury was accidental. In the course of its opinion, the court discussed generally the law applicable to accident insurance policies:

> An accident in its commonly accepted meaning and as used in insurance contracts is "an event that takes place without one's foresight or expectation. An undesigned, sudden and unexpected event, * * * happening by chance or unexpectedly, taking place not according to the usual course of things." "An event which proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected; chance, casualty or contingency." *Pack v. Prudential Casualty Co.*, 170 Ky. 47, 185 S.W. 496, 498, L.R.A.1916E, 952; *Huffman v. Commonwealth*, 193 Ky. 79, 234 S.W. 962, 964.

> . . . . .

> The words "accident," "accidental" and "accidental means," as used in insurance policies, have never acquired a technical meaning in law, and must be interpreted according to the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured. *Id.* at 613, 619, 82 S.W.2d at 781, 784.

■ If this is an accurate statement of Kentucky law, Judge Swinford was surely correct in overruling Continental's motion for a directed verdict and in submitting the contract claim to the jury. There was ample evidence to the effect that Mr. Alford's loss of vision was an entirely unforeseen and unexpected result arising from an unknown ultimate cause. Under the *Donohue* definition, the evidence plainly warranted a finding by the jury that Mr. Alford's loss was accidental.

Continental, however, argues that *Donohue* is factually distinguishable and that this case should be controlled by *Salinger v. Fidelity & Casualty Co.*, 178 Ky. 369, 198 S.W. 1163 (1917), which stated that "an injury is not produced by accidental means within the terms of an accident insurance policy where it is the direct though unexpected result of an ordinary act in which the insured intentionally engages." *Id.* at 371, 198 S.W. at 1164. Continental believes that under *Salinger* plaintiff suffered no accident, since his blindness resulted from the surgery, which he underwent intentionally.

Although the issue is not free from doubt, we hold that the District Court properly applied the *Donohue* definition in the case at bar. It appears that the effect of the language from *Salinger* quoted above was called into question by the court's later opinion in *Donohue*, in which the court concluded that:

> [*Salinger* is not] rested on the theory that the insured was voluntarily and intentionally doing the thing claimed to have caused the injury, although that principle was referred to in [the opinion]. The opinion in [*Salinger*] was based on the theory that the injury resulted from disease . . . .

> 259 Ky. at 615, 82 S.W.2d at 782.

In the case at bar, of course, the evidence indicated that Mr. Alford's loss of vision did not result from the disease in his lacrimal gland.

Furthermore, a number of subsequent cases have relied upon *Donohue* in defining the word "accident." *The Travelers v. Humming Bird Coal Co.*, 371 S.W.2d 35, 38 (Ky.1963); *Travelers Ins. Co. v. Witt*, 260 S.W.2d 641, 642–43 (Ky.1953);

*Pacific Mutual Life Ins. Co. v. Fagan,* 292 Ky. 533, 536–37, 166 S.W.2d 1007, 1009 (1942). In these cases, the court essentially looked to the factors identified by *Donohue* in determining whether the injury involved was accidental. We conclude that *Donohue* states general principles of Kentucky insurance law properly applicable to this case. Accordingly, the District Court did not err in denying Continental's motion for a directed verdict on the contract claim.

■ In his appeal, Mr. Alford contends that the District Court should have submitted to the jury his tort claim for compensatory and punitive damages based on Continental's refusal to make payment under the policy. Initially, we note our uncertainty that Kentucky recognizes a cause of action in tort for refusal to pay an insurance claim. *See McNutt v. State Farm Mutual Automobile Ins. Co.,* 369 F.Supp. 381, 385–86 (W.D.Ky.1973), *aff'd* 494 F.2d 1282 (6th Cir. 1974); *United States Fidelity & Guar. Co. v. Fyffe,* 471 S.W.2d 23 (Ky. 1971); *General Accident Fire & Life Assurance Corp. v. Judd,* 400 S.W.2d 685 (Ky.1966).

As we view the matter, however, this question of Kentucky law need not be resolved. Mr. Alford does not argue that he is entitled to recover in tort in the absence of bad faith or unreasonable conduct on the part of the insurer, and in this respect the proof was entirely inadequate. The record in this case demonstrates that Continental obtained several medical reports from the doctors who treated Mr. Alford. This information was examined by Continental's claims adjusters and reviewed by the company's medical staff. Mr. Alford's claim was considered thoroughly by Continental employees in consultation with each other. In addition, it was by no means obvious that Mr. Alford's loss of sight was accidental within the meaning of the insurance policy. There is simply no evidence that Continental's refusal to make payment was motivated by other than a good-faith belief that Mr. Alford's loss was not covered under the policy. Since there was no evidence of bad faith or unreasonable conduct, the District Court properly directed a verdict in favor of Continental on the tort issue.

The judgment of the District Court is affirmed. No costs are taxed; each party will bear its own costs on appeal.