## Mullen et al. v. Coleman (two cases).

March 14, 1944.

352

Wheeler & Shelbourne for appellants.

Waller & Threlkeld for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

Two appeals are involved in this case. The first is from a $1500 judgment in favor of Mrs. Lillie Coleman for personal injuries resulting from a collision of the car she was driving with one owned by Mr. and Mrs. Mullen, which was being driven by Robert Sanderson. The second is from a $1000 judgment in favor of Henry Coleman, the husband of Mrs. Lillie, in an action wherein he sought damages for loss of consortium, his wife's hospital and doctors' bills, and the destruction of his car. Incidentally, the amount awarded Mr. Coleman was approximately $100 less than the amounts he claimed on the last two counts.

The principal ground urged for reversal is that a peremptory instruction should have been given in favor of the appellants. Being of the opinion this contention is well grounded, we shall confine our consideration of the case to that question.

The accident happened about nine o'clock on the morning of October 9, 1940, at a point some two miles west of Paducah on U. S. Highway 60, where a side road, known as Coleman Lane, enters the highway from the north at practically a right angle. Highway 60 west of Paducah is concrete and runs virtually a straight course through flat country for several miles. Mrs. Coleman was riding alone from her home on the Coleman Lane toward Paducah. Sanderson was driving alone west from Paducah. Coleman Lane is covered with gravel and the grade leading up to the highway is approximately 12 per cent, according to Mrs. Coleman.

She said the approach was one of the steepest and one of the worst in McCracken County and that it was not her practice to obey the stop sign and stop her car before entering the highway except when a car was passing on the highway because, on occasions, her car had rolled back down the grade as many as three times. There is a clear view in both directions for several hundred feet from the intersection.

Mrs. Coleman's version of the accident follows: She was traveling about 10 miles an hour as she came up the approach to the highway; when she was within 15 or 20 feet of the pavement she could see approximately 800 feet in the direction of Paducah and no car was in sight; there was no car approaching from the opposite direction; she did not stop before entering the highway; and when the front wheels of her car were about two feet on the pavement she saw Sanderson's Buick car on the bridge about 400 feet from the intersection in the direction of Paducah. When asked at what rate of speed the Buick was approaching, she said:

"I have never seen a car going at that rate of speed before but judge it would be going not less than one hundred miles an hour."

As to what she did when she saw the car approaching at 100 miles an hour, she said:

"Realizing that I was on his side of the road about two feet I put on the gas and went across the road and got straightened on the right side of the road going towards town, so I went on across the road and saw him set his brakes and saw the effect of the brakes had begun to shimmy and continued it until it hit me after it crossed the line on my side of the road. Realizing the rate of speed he was coming, I knew if he lost control of his car I would be in his path and it would be my fault if he hit me had I stayed on his side of the road, and him being at the bridge I put on the gas and crossed the road."

Mrs. Coleman said she had traveled some 25 or 30 feet on her side of the highway before Sanderson's car sideswiped hers and knocked it off the highway; and Sanderson's car was across the center line of the highway when it was about halfway between the bridge and the point where she placed the collision. Witnesses for Mrs. Coleman said there were black skid marks starting

near the bridge and which crossed from the right hand side of the highway to the left and ran in the direction of the point where Mrs. Coleman said the collision occurred. She offered testimony also to the effect that there was a greasy spot on the highway at that point. There was evidence showing that her car was sideswiped as she testified. The left rear wheel and housing were torn off her car.

Sanderson's version of the collision, which was supported in almost every respect by the testimony of a witness who said he was following Sanderson down the highway, follows: He was driving between 40 and 45 miles an hour when he approached Coleman Lane; he saw Mrs. Coleman's car approaching the highway and slackened his speed; she slowed her car as though she were going to stop, but instead of doing so drove out into the highway; he applied his brakes and swerved to the right to avoid hitting the other car which stopped when the front wheels were at about the center line; he was unable to turn down the lane or to pull around Mrs. Coleman's car, though the right wheels of his car were off the paved part of the highway; the left side of his front bumper struck Mrs. Coleman's car about where the left rear fender joins the running board; this caused the cars to be "slapped together;" and the cars then spread out and went off the road, Mrs. Coleman's to the left and his to the right.

The appellants earnestly insist Mrs. Coleman's opinion as to the rate of speed of Sanderson's car was formed at a time and under such conditions that it was not sufficient to show negligence on his part. While there is force to the argument, especially since Mrs. Coleman was unable to say whether she shifted gears on her car when she shot out into the highway, and since there was testimony showing she had a chronic heart ailment, we are not prepared to say her testimony on the question of speed did not constitute more than a scintilla. This, of course, placed negligence on Sanderson.

There remains to be determined then the question of whether Mrs. Coleman was guilty of contributory negligence as a matter of law. That she was negligent in failing to stop before entering the highway is beyond dispute, in view of the provisions of KRS 189.330. It is vigorously contended, however, this negligent act was

not the proximate cause of the accident, in view of Mrs. Coleman's testimony to the effect that she got across the highway and proceeded some 25 to 30 feet toward Paducah before Sanderson's car struck hers. It is urged also that she had a right to assume persons on the highway would be operating their cars at a lawful rate of speed; that the cars would be in proper mechanical condition; and also that, while persons driving cars on the main highway have the right of way, she was only required to yield the right of way to cars within the intersection, or cars approaching so closely as to constitute an immediate hazard. It must not be overlooked, however, as pointed out in Short v. Robinson, 280 Ky. 707, 134 S. W. (2d) 594, that Sanderson had a right to assume, in the absence of something to put him on notice to the contrary, Mrs. Coleman would conform to the law by stopping her car before entering the highway, and that he had a right to act on that assumption in determining his manner of using the highway. Stress is placed also on Mrs. Coleman's testimony to the effect that Sanderson's car was 400 feet away when she started across the highway.

We are frank to admit the case is a close one. However, we can not escape the conclusion it was Mrs. Coleman's own conduct which produced the situation causing the collision. The case is unlike the recent cases of Rutherford v. Smith, 284 Ky. 592, 145 S. W. (2d) 533, and Hilsenrad v. Bowling, 292 Ky. 368, 166 S. W. (2d) 847, wherein it was pointed out the drivers of the cars which were struck had the right to assume that the drivers of the striking cars were traveling at a reasonable rate of speed. It must be recalled that Mrs. Coleman said no car was in sight for 800 feet in the direction of Paducah when she was only 15 or 20 feet from the paved part of the highway, and at which time she was traveling only 10 miles an hour. She said also she could have stopped her car with little difficulty by applying the brakes. Mrs. Coleman can not be heard to say she had a right to assume Sanderson was driving his car at a reasonable rate of speed because it was her own testimony which showed his car traveled at least 400 feet while she traveled the 15 or 20 feet to the highway. Furthermore, it was her testimony which showed it was traveling at least 100 miles an hour when it was 400 feet from the intersection. At that time she said the front wheels of her car were about two feet on the pave-

ment. We have just noted that she said she could have stopped her car with little difficulty by applying the brakes. Had she done this, or backed off the highway, she would not have brought about the situation which caused the collision. Instead, knowing the Buick was approaching at a terrific rate of speed, she deliberately shot the gas to her car in an attempt to beat it across the highway. Of course she said she was successful in doing that, and that she had proceeded some 25 or 30 feet from the intersection before her car was sideswiped, but even then she is confronted with her own testimony which showed that immediately after Sanderson's car crossed the bridge he began to apply his brakes in an effort to avoid striking her, or at least to slacken his speed. Even if it be assumed Sanderson was negligent in driving his car at an excessive rate of speed, it was Mrs. Coleman's conduct covering a period of a very few seconds which was the proximate cause of the accident. Under the circumstances, we believe a peremptory instruction should have been given in favor of the appellants.

Wherefore, the judgments are reversed, with directions to set them aside, and for proceedings consistent with this opinion.