## Huber & Huber Motor Express, Inc., v. Croley. Same v. Ellison.

October 15, 1946.

102

Stephens & Steely for appellant.

L. O. Siler for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

On August 20, 1943, a collision occurred between a truck belonging to Huber & Huber Motor Express, Inc., and a car owned by I. N. Ellison which was being driven by Paul Croley, an infant. The collision occurred as Croley was driving from a side road into U. S. Highway 25W in South Williamsburg. In his suit against Huber & Huber, Ellison recovered the sum of $200, and in Croley's suit, which was brought by his father as next friend, he recovered $1,000. The actions were tried together, so the appeals will be treated in the same manner. Since we have reached the conclusion that the cases must be reversed, we are sustaining the appellant's motion for an appeal in the Ellison case.

Several grounds are urged for reversal, but, since we think the contention that the appellant is entitled to a directed verdict is well grounded, we will discuss only that point.

Under KRS 189.330, subsection (4), it was Croley's duty to bring his automobile to a stop and yield the right of way to appellant's truck, if it was so near the intersection as to constitute an immediate hazard. Croley said that, as he approached the intersection at a speed of from 10 to 15 miles an hour, he saw the truck some 200 to 300 feet down the highway; it was traveling about 35 to 40 miles an hour; and he knew approximately how many feet it would travel per second. On neither direct nor cross examination did he say that he brought his car to a complete stop. On direct examination he said that he brought it to a "practical stop," shifted it into low gear, and proceeded into the intersection. Ac-

cording to his statement, he had traveled some 20 or 25 feet down his side of the highway when the truck crossed the center line and struck the left fender and side of his car, thereby causing his and Mr. Ellison's injuries. His testimony on cross examination relative to stopping at the intersection follows:

"Q. 36. Was your car moving? A. If it was it was very little. Just barely turning over.

"Q. 37. Did you stop your car when you saw the truck? A. I slowed it down to almost a complete stop. I am not going to say it was a complete stop, because I don't remember.

"Q. 38. You don't tell the jury that you did bring your car to a complete stop, do you? A. I will tell them that I brought it about to a complete stop, the wheels just barely turning over, maybe."

The truck driver said that when he was in about 100 feet of the intersection he saw Croley's car some 20 to 30 feet from that point; as he approached the intersection the car slowed down and he thought it was going to stop; he was then about 30 feet from the intersection and traveling at a speed of 22 miles an hour; the car did not stop, but speeded up and started across the highway; he swerved to the left in an effort to avoid striking the car; and when the car was at about the middle of the intersection he struck it broadside and pushed it some 15 to 20 feet up the highway. There is evidence supporting both versions of the collision.

It was Croley's duty to bring his car to a stop when he reached the intersection and yield the right of way if the approaching truck was so near the intersection as to constitute an immediate hazard. He admitted that he knew it was his duty to stop. We have noted that he said he saw the truck some 200 to 300 feet away, and it was traveling at a speed of from 35 to 40 miles an hour. It was his estimate that the truck was traveling at the rate of about 44 feet a second. While his estimate of the number of feet the truck was traveling per second is too low, still, according to his statement, the truck would have reached the intersection in a little over four seconds. Instead of bringing his car to a complete stop and yielding the right of way to the truck, which was his duty under the evidence in this case, he shifted into low gear

and proceeded into the intersection. The truck driver had every right to believe that when Croley slowed his car at the intersection he would stop and yield the right of way. This slowing down of Croley's car was a virtual invitation for him to proceed. The appellees contend, however, that the truck driver was negligent in driving his truck at an excessive rate of speed in a thickly settled area, and that he swerved across the center of the highway and struck Croley's car after the latter had traveled some 20 feet from the intersection on his side of the road. It is contended also that, had he proceeded on his own side of the highway, the collision would not have occurred. The further contention is made that Croley's "practical stop" complied with the statute. We think, however, that the appellant's theory of the case is the correct one, even though it be conceded that the truck driver was traveling at an excessive rate of speed.

The case is very similar to the recent case of Mullen v. Coleman, 297 Ky. 351, 179 S. W. 2d 600, 602. In that case the plaintiff, Mrs. Coleman, entered U. S. Highway 60 from an inferior highway without stopping. She said she entered the intersection at a slow rate of speed, and that, when the front wheels of her car were out about two feet on the highway, she saw the approaching car some 400 feet away, which, according to her statement, was traveling at 100 miles an hour. She speeded up and turned her car in the direction of the oncoming car, and, after she had traveled some 25 feet on her side of the road, the approaching car sideswiped hers. In that case we said:

"* * * Mrs. Coleman can not be heard to say she had a right to assume Sanderson was driving his car at a reasonable rate of speed because it was her own testimony which showed his car traveled at least 400 feet while she traveled the 15 or 20 feet to the highway. Furthermore, it was her testimony which showed it was traveling at least 100 miles an hour when it was 400 feet from the intersection. At that time she said the front wheels of her car were about two feet on the pavement. We have just noted that she said she could have stopped her car with little difficulty by applying the brakes. Had she done this, or backed off the highway, she would not have brought about the situation which caused the collision.

Instead, knowing the Buick was approaching at a terrific rate of speed, she deliberately shot the gas to her car in an attempt to beat it across the highway. Of course she said she was successful in doing that, and that she had proceeded some 25 or 30 feet from the intersection before her car was sideswiped, but even then she is confronted with her own testimony which showed that immediately after Sanderson's car crossed the bridge he began to apply his brakes in an effort to avoid striking her, or at least to slacken his speed. Even if it be assumed Sanderson was negligent in driving his car at an excessive rate of speed, it was Mrs. Coleman's conduct covering a period of a very few seconds which was the proximate cause of the accident. Under the circumstances, we believe a peremptory instruction should have been given in favor of the appellants.''

In the case at bar Croley's actions were very similar to those of the plaintiff in the Coleman case. According to his testimony, the truck was traveling at a high rate of speed, and after he had virtually brought his car to a stop he deliberately put it into low gear and entered the intersection, apparently in an attempt to beat the truck across the intersection. In doing this we think he was guilty of at least contributory negligence, and, therefore, is not entitled to recover against the appellant.

The appellees stress the case of Stephens v. Glass, 296 Ky. 90, 176 S. W. 2d 139, 141, wherein it was said: ''If it should be conceded that Glass may have been negligent in not stopping his automobile before entering upon the highway—although according to the preponderance of the proof he did stop before he entered the south half of it, upon which Stephens was traveling—yet the collision might not have occurred had Stephens been traveling at that particular point at a rate of speed 'that is reasonable and prudent, having regard for the traffic and for the condition and use of the highway.' It has been the experience of this court that excessive speed at which automobiles travel the highways of the country is by far the greater cause of highway collisions, and the statutory limitations of allowable speed is for the sole purpose of preventing just such results.''

In that case Stephens, who filed the first action, was the one driving along the main highway, and it was

Glass who entered it from an inferior road. Therefore, the cases are clearly distinguishable.

The judgments are reversed, with directions to set them aside, and for proceedings consistent with this opinion.