## Whalen's Adm'x v. Sundell et al.

January 28, 1947.

Mahan & Mahan and Edwin O. Davis for appellant.

Eugene Cochran and Woodward, Dawson, Hobson & Fulton for appellees.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

In an action by Robert Whalen's administratrix, the appellant, against Walter Sundell and National Life and Accident Insurance Company, the appellees, seeking damages for Whalen's death by automobile collision, the trial court directed a verdict for appellees at the conclusion of appellant's evidence. The administratrix now appeals from the trial court's judgment denying her any damages.

The bone and sinew of appellant's basis of appeal consists of her contention that all of her evidence was sufficient to have supported a jury verdict in her favor and that consequently the trial court committed reversible error in directing a verdict for appellees.

Appellant's decedent, Robert Whalen, her divorced husband, was killed on the night of August 16, 1945, while he was afoot on the four-lane highway known as U. S. 31-W at a place near West Point and about 20 miles south of Louisville. There was no witness to the tragedy except the appellee Sundell, who was driving alone in his own car when Whalen was hit. Sundell having been called as a witness for appellant during this trial, testified that his brakes and lights were in normal condition, that he was driving at a speed of 30 or 35 miles per hour in a northward direction and on the eastward side of the highway about 3 feet from the eastward edge of the pavement, that he was about 30 or 40 feet behind a vehicle traveling northward in front of him, that he was keeping a sharp lookout ahead, that he first saw and struck Whalen in the same second of time, that

the front part of his car, between its center and its right fender, hit Whalen just as he appeared before the light of the car, that the brakes were immediately applied with the result that the car stoppd in a distance of about 30 or 40 feet from the place of collision, that he then moved the car northward about 100 or 125 feet and there parked it beyond the pavement and away from the flow of traffic.

Appellant directs our attention to three incidents, which came into the evidence of this trial, in support of her present contention that her evidence was sufficient to have sustained a jury verdict in her favor had the case been submitted to the jury and had the jury decided in her favor. These incidents consist of (1) the testimony of a former highway patrolman, who appeared on the scene soon after the accident, to the effect that Sundell pointed to the place where he had stopped his car and that such place was 115 or 125 feet beyond the place where Whalen's body lay and (2) Whalen's shoes were found near his body instead of on his feet and (3) the front part of the seam joining the right front fender to the front grill work of Sundell's car was burst open by the force of this collision. (1) The former highway patrolman's testimony is not very definite as to whether Sundell told him that he *primarily* or *secondarily* stopped, that is after the first stop near the impact, at the place located 115 or 125 feet from Whalen's body. But even if Sundell told the patrolman that he ran 125 feet after the impact and before stopping, such a statement standing alone would surely not furnish more than a scintilla of evidence, if that much, tending to show negligence on the part of Sundell. Almost any reasonably prudent person might run a car 125 feet before stopping, following an accident of this kind, because that interval might be required in which to recover mental function after experiencing the pronounced shock of hitting a pedestrian. (2) No one offered any explanation as to why Whalen's shoes were not on his feet. No one said that the laces were broken or that the leather was split. He could have been carrying his shoes in his preparation to enter a water culvert where, according to the evidence, he had hidden some ears of corn, and which corn Whalen had intended to pick up and carry to his home. Again, the shoes may have been too large for his feet or they may have been unlaced or they may have

been house slippers. Nothing but speculation could assign a reason for the finding of Whalen's shoes near his body instead of on his feet. (3) The splitting of the fender seam on Sundell's car was explained by him. He said that he had owned this car, a Plymouth, nearly 5 years and that it had been driven about 80,000 miles and that this fender seam had been rusted out by travel on highways where there was salt. No one refuted that testimony.

Appellant contends that the three evidential incidents mentioned above constituted evidence sufficient to prove that appellee Sundell was operating his automobile at a negligent rate of speed at the time of this collision, evidence sufficient to support a verdict which the jury might have rendered in appellant's favor. We can not agree with her viewpoint for the reasons hereinafter discussed.

At this point, it would perhaps be well to explain the reason for appellant's inclusion of appellee National Life and Accident Insurance Company as a party to her suit. Sundell was a district manager for this company. He was, at the time of this accident, returning from the company's home office in Nashville. He had made this trip for the purpose of conferring with the company on the subject of its proposal to transfer him from Louisville to another city. He was driving his own car. He had not been specifically requested to make this particular trip. Appellant contends that Sundell was, on this occasion, engaged in performing business for his principal, appellee company, and that accordingly the latter must respond in damages to appellant. However, in view of the conclusion reached by us on the main issue of this case, the issue of Sundell's alleged negligence and its causation of this accident, we find it unnecessary to herein decide whether or not Sundell was, in driving his own car on this occasion and upon this mission, acting as an agent of this company so as to make the latter liable in damages to appellant. We pass this question of appellee company's alleged responsibility to the members of the bar for their own discussions among themselves relating to the proper solution of this problem.

We now take up the question of whether or not appellant established, through all the facts indicated above

and through the reasonable inferences deducible therefrom, satisfactory evidence of legal negligence attributable to appellee Sundell on this occasion. It must be remembered that a mere scintilla of evidence is no longer considered adequate evidence for any purpose whatever. This means that the evidence of any case must now have some supporting ability, like the pillar rocks under a house. A mere scintilla does not meet these requirements. A party's evidence must, if adequate, be able to shore, to sustain, to uphold staunchly whatever verdict may eventually issue forth from the trial jury. For the metamorphosis of the scintilla rule, see the case of Nugent v. Nugent's Ex'r., 281 Ky. 263, 135 S. W. 2d 877. It must also be borne in mind that this court has heretofore declared that the rights of litigants, regardless of affluence, creed or color, must not be determined by mere guesswork, surmise or speculation. See the case of Chesapeake & O. R. Co. v. Crider, 199 Ky. 60, 250 S. W. 499. And so having carefully examined all of appellant's evidence in this case, we are now compelled to say that we found in it nothing beyond scintilla, surmise or speculation. But these latter have no supporting power. These latter are not the rugged pillars necessary for the strong foundation required to bolster any juristic building which might arise upon an awarded verdict. We might compare the verdict of a claimant at the hands of a trial jury to a modern weapon of offensive warfare. It *is* in fact just about such a weapon. Therefore, it too must be made of good hard steel, the hard steel of sufficient evidence, evidence which is imbued with the sturdy substance of convicting power. We do not believe that the full measure of appellant's best evidence met the demands of these requirements.

But, in addition to the requirement of proving some legal negligence on the part of appellee Sundell, this appellant also faced the requirement of proving that such negligence was itself the direct and proximate cause of her decedent's death. It is never sufficient to show only negligence. The causal connection between negligence and damage must always be made. See Johnson v. Mobile & O. R. Co., 178 Ky. 108, 198 S. W. 538; Sutton's Adm'r v. Louisville & N. R. Co., 168 Ky. 81, 181 S. W. 938; Gregory's Adm'x v. Director General of Railroads, 195 Ky. 289, 242 S. W. 373. If we should assume or con-

cede that appellant produced sufficient evidence to justify a submission of her case to the jury on the question of appellee Sundell's negligent speed, or if we should even assume or concede that he was traveling at a rate of speed in excess of 100 miles per hour at the time of this accident, yet the appellant would still have faced the requirement of showing that such unwarranted and negligent speed was the proximate cause of Whalen's death. An automobile driver might be traveling 100 miles per hour on a wide, straight road, and a blind, deaf person, whose handicaps were not known to the driver, might suddenly surge out from a place of safety into the pathway of the driver and thus lose his life. The driver's speed would certainly have been one of negligence. Yet that speed and that negligence would not have been deemed the cause of the accident. The pedestrian's own activity while under such handicaps would necessarily have had to bear the stigma of having caused such an accident. See Knecht v. Buckshorn, 233 Ky. 329, 25 S. W. 2d 727; Mullen v. Coleman, 297 Ky. 351, 179 S. W. 2d 600; Huber, etc., v. Croley, 303 Ky. 101, 196 S. W. 2d 965. In the Mullen case, supra, a woman testified that the automobile in the case was traveling ''not less than one hundred miles an hour,'' and yet this court was impelled to say that there was a lack of evidence in that case to show that such excessive, negligent speed was the proximate cause of the accident. It seems that old man negligence and old lady proximate cause must be effectively married in an inseparable union in order to produce the legitimate progeny of any claimant's damage judgment in a court of law.

If we should say in the present case that (1) the highway patrolman's statement tending to show that Sundell's car traveled 125 feet before it stopped after the collision and that (2) the finding of Whalen's shoes near his body instead of on his feet and that (3) the burst seam of Sundell's car, all taken together, furnished evidence of negligent speed sufficient to have supported a jury verdict in favor of appellant, yet we would still have had to lay our hands upon that necessary link which must be welded into every chain of valid and successful litigation, the link of proximate cause. Proximate cause may sometimes be a rather small coupler. Nevertheless, the cohesion of a valid cause of action

seems to depend entirely upon just such a binding shackle between the other elements of a legal cause, the other elements being legal negligence and resulting damages. Since the appellant produced no evidence tending to show that Sundell's speed, whatever it may have been, constituted the proximate cause of Whalen's death, again we say that the trial court correctly directed a verdict in favor of the appellees.

Wherefore, having found no error in the judgment rendered in this action, such judgment is now hereby affirmed.