## Romans et al. v. Duke et al.

March 10, 1950.

Rehearing denied June 23, 1950.

A. J. Bratcher, Judge.

Myers, Bilyeu & Chyle, W. O. Bilyeu and Leland H. Logan for appellants.

Rodes Bratcher, Earl F. Martin and Otto C. Martin for appellees.

CLAY, COMMISSIONER—Reversing.

In this motor vehicle collision case, appellee recovered a $10,300 judgment for personal injuries. Appellants' principal contention on this appeal is that they were entitled to a directed verdict.

The accident took place at what we may designate as the intersection of state highway No. 71 and state highway No. 105 near Morgantown. Appellee approached the intersection in a passenger automobile and intended to turn left onto highway No. 71. Appellants' loaded truck was approaching from that direction on this main highway.

There is a regulation Stop sign located near the intersection on the road appellee was using. He did not stop, however, but drove onto highway No. 71 in front of the approaching truck. The driver of the latter vehicle applied his brakes and cut his wheels to the left in an attempt to avoid the collision. The vehicles came together some two or three feet to the truck's left of the center line on highway No. 71.

Appellee testified he had stopped to let out a hitch-hiker 150 or 200 feet back of the intersection. Here is his statement as to how the accident occurred:

"Well, I let this hitch-hiker out and started on up to the intersection. I didn't stop at the stop sign, I moved on up, that stop sign was way on back from the road—from the intersection. I pulled up about where the other road comes across and saw, and saw this truck coming about 200 to 300 feet away, I threw on my brakes moderately, I didn't bring the car to a complete stop. I saw the truck driver give a right-hand signal out of the truck window; I went on across the road, and after I crossed the road on my side of the road, he kept pulling to my side of the road toward me. I tried to go on straight and get on my right as far as I could, but before I could I went out of the car, * * *"

He testified he approached the intersection in second gear at about fifteen miles an hour, and that appellants' truck was moving "somewhere around 40."

The defendant's driver testified he saw appellee when he was some 200 feet from the intersection; that the approaching car slowed up as if to stop but then came into the intersection, cutting the corner to the left.

The facts in this case are almost identical with those considered in Huber & Huber Motor Express, Inc. v. Croley, 303 Ky. 101, 196 S. W. 2d 965. Similar vehicles were involved; the intersection was the same general type; the vehicles approached from the same directions; the distances, estimated speeds, and point of collision were the same; and the plaintiff's actions were much alike. In that case we held the plaintiff was guilty of contributory negligence as a matter of law for failing to stop at the intersection, and a directed verdict should have been given for the defendant. The opinion covers every fact and legal issue raised on that question in this case, with one exception.

In the instant case appellee testified that appellants' truck driver gave a right-hand signal, indicating a right-hand turn. Appellee insists this signal led him to believe the truck was going to turn into the highway upon which he approached, and if the truck had so turned, the collision would not have taken place. We think this argument cannot be sustained.

KRS 189.330 (5) provides first that a driver of a vehicle shall stop at an intersection where a stop sign is erected. He shall then proceed cautiously, yielding to vehicles "approaching so closely as to constitute an immediate hazard."

It is clear appellee violated the first absolute duty imposed, because he did not stop. This requirement of the statute is obviously intended to furnish the operator of a motor vehicle a full opportunity to observe the traffic conditions on the main highway. Stopping will give him time to analyze the possible hazards and to determine if it is safe to proceed. His failure to stop in the present case resulted in a quick guess about the truck driver's intentions, which was entirely wrong. While the failure to stop might conceivably not constitute the proximate cause of a collision, it is clear that it was an essential element of this accident.

Even if we were to assume, however, that appellee's failure to stop was not contributory negligence as a matter of law, he violated the secondary duty imposed by this subsection of the statute. The approaching heavily loaded truck constituted an *immediate hazard* regardless of whether it proceeded in a straight line or which way

160

it turned. Accepting appellee's statement that the truck driver gave a signal for a right-hand turn, the truck continued to constitute such hazard until the two vehicles had safely passed. The signal given, if it was given, could not be held an invitation for appellee to proceed blindly into the intersection. Even if the truck driver had turned right to enter the highway on which appellee approached (which he obviously could not do with safety at the speed appellee estimated he was traveling), it is pure speculation a collision would have been avoided.

We are forced to the conclusion that appellee's failure to comply with the statute, in not stopping when confronted with an immediate hazard, was at least a contributing, if not the sole cause of this collision.

For the reasons stated, a verdict should have been directed for appellants. All other questions raised on this appeal are reserved.

The judgment is reversed with directions to grant appellants a new trial and for proceedings consistent herewith.