James C. MANNING, d/b/a H-B Milk
Company, Appellant,

v.

Willard CLAXON'S EXECUTRIX
(Ruby Claxon), Appellee.

Court of Appeals of Kentucky.

Oct. 28, 1955.

R. Vincent Goodlett, Hazelrigg & Cox, Frankfort, for appellant.

James M. Honaker, Paul E. Tierney, Frankfort, for appellee.

MONTGOMERY, Judge.

This is an appeal from a judgment in a truck-car accident case by which the plaintiff, appellee Ruby Claxon, as executrix of the estate of Willard Claxon, deceased, was awarded $5,000 for the death of her husband and damages to his automobile against the defendant, appellant James C. Manning, doing business as H-B Milk Company. There was no recovery on appellant's counterclaim for damages to his milk truck.

The sole question on this appeal is whether or not the trial court erred in refusing to direct a verdict for the defendant on the plaintiff's claim at the close of all the evidence.

The accident which gave rise to this action occurred during daylight hours, about 5:15 a.m., August 4, 1953, in Owen County at the junction of Kentucky Highways Numbers 35 and 607. The latter was known also as the Claxon Ridge Road. At that point, Kentucky Highway No. 35 runs generally north-south, and the Claxon Ridge Road extends eastward therefrom. The Claxon Ridge Road, as it approaches Highway No. 35, is a steep upgrade of 7%. A

stop sign stands on the right of the upgrade near the fan-shaped mouth of the Claxon Ridge Road. Its purpose is to control traffic on the Claxon Ridge Road as it approaches Highway No. 35.

Appellant's truck was traveling north on Highway No. 35 toward Monterey. It was in the course of a regular milk pickup run, gathering raw milk from farms. The truck was being driven by Curtis Willard, the regular driver, who was accompanied by a helper, J. V. Flynn.

Willard Claxon, driving alone, was proceeding from his home on the Claxon Ridge Road to Lexington, where he was employed as a carpenter. He had left home around 5:00 a.m., and was due to be on the job in Lexington at 6:30 a.m. At the time of the collision, the Claxon car was coming out of the Claxon Ridge Road and was turning southward, or to the left, toward Frankfort. From Claxon's position, there was a clear view of 400 to 500 feet to his left, south, toward Frankfort. Claxon had a deficiency in vision in his left eye, the side from which appellant's truck approached.

Appellant's driver testified that when his truck was about 225 feet from the junction, traveling at a speed of between 40 and 50 miles per hour, he saw the Claxon car on the Claxon Ridge Road slowly approaching the junction, as though it "was going to stop." As his truck, in its right-hand lane, reached a point 50 or 60 feet from the junction, the Claxon car, without stopping, pulled into the path of the truck and turned to the left toward Frankfort. When the Claxon car had moved about halfway into the truck's lane, appellant's driver said he "hit" his "brakes and swerved to the left to avoid hitting" the Claxon car. The driver's helper also testified that the Claxon car did not stop.

The truck driver did not remember whether he sounded the horn. The helper testified the horn was not sounded. As the driver swerved his truck to the left, the helper heard him exclaim, "That man didn't stop!"

At the time the truck struck the car, the car was at an angle of approximately 45 degrees to the center line of Highway No. 35, and the car was in the process of turning left toward Frankfort in the path of the truck. The skid marks of the truck, which extended from the truck's right-hand lane into the left lane, began at a distance of 28 feet from the point where State Patrolman Harry Robertson testified in his opinion the point of impact occurred. After the impact, the truck pushed the car a distance of 40 feet and both vehicles came to rest on the west side of Highway No. 35. Trooper Robertson testified that he found the Claxon car to be in second gear, and in his opinion it had not stopped before entering the highway. He stated that by skilled manipulation of the automobile it would have been "possible but highly improbable" that Claxon could have stopped his car and moved upgrade out onto the road without first shifting into low gear.

The vehicles collided within the zone of the intersection at a point almost directly opposite a concrete post on the east shoulder of Highway No. 35 in the southeast angle formed by the junction of the two roads. The shoulder embankment of the road drops off about 10 feet.

According to appellant's truck driver, the left rear wheel of the Claxon car at the instant of the impact was near the center of the road. According to State Patrolman Robertson, at the instant of impact the left rear wheel of the Claxon car was 2 feet and 8 inches west of the center of the concrete pavement, with a portion of the car protruding, perhaps 6 or 8 inches, into the truck's right-hand lane. The Claxon car was hit on the left side about the center, as the truck had veered from its lane in an effort to avoid the accident.

The appellant contends the decedent was contributorily negligent as a matter of law, thus entitling appellant to a directed verdict. We agree with this contention.

KRS 189.330(5) provides:

"The driver of a vehicle shall likewise stop in obedience to a stop sign at an intersection where a stop sign is erected at one or more entrances to

the intersection although part of a through highway does not form the intersection. He shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed."

Under this statute, it was Claxon's duty to bring his automobile to a stop in obedience to the stop sign and to yield the right of way to appellant's truck if it was so near the intersection as to constitute an immediate hazard. Both appellant's truck driver and his helper testified that Claxon approached the main highway as if he were going to stop but failed to stop or to yield the right of way to the truck. The evidence that Claxon's car was found in second gear tends to corroborate their testimony. No evidence contradicts their statements. Appellant's driver had a right to assume Claxon would stop. Mullen v. Coleman, 297 Ky. 351, 179 S.W.2d 600; and Huber & Huber Motor Express, Inc., v. Croley, 303 Ky. 101, 196 S.W.2d 965.

On facts similar to those in this case, this Court has denied recovery by drivers who have violated one of the subsections of KRS 189.330 by directing a verdict for the defendant. Mullen v. Coleman, 297 Ky. 351, 179 S.W.2d 600; Huber & Huber Motor Express, Inc., v. Croley, 303 Ky. 101, 196 S.W.2d 965; and Romans v. Duke, 313 Ky. 157, 230 S.W.2d 439.

Appellee argues that the present case is clearly distinguishable on its facts from the above cited cases. It is urged that in each of those cases the plaintiff admitted he did not stop at the intersection before proceeding onto the highway, whereas in this case there is evidence from which the jury could conclude that the deceased stopped, since Trooper Robertson testified it would have been "possible but highly improbable" for Claxon to have stopped his car and then moved out onto the road without first shifting into low gear. Conceding that Claxon stopped, he still violated a secondary duty imposed by the statute by failing to yield the right of way to appellant's truck which

must have been approaching so closely as to constitute an immediate hazard. Romans v. Duke, 313 Ky. 157, 230 S.W.2d 439.

The appellee says the instant case is also distinguishable from Brumbach v. Day, Ky., 260 S.W.2d 939, and Roberts v. Rogers, Ky., 265 S.W.2d 448, two recent intersection cases in which this Court ordered directed verdicts against recovery by drivers who drove their vehicles onto a highway in front of another vehicle approaching so closely as to constitute an immediate hazard. Appellee says that in each of those cases the operator of the vehicle testified he did not see the oncoming car and the Court merely held him responsible for seeing what he should have seen, whereas in the present case there is evidence from which it can be inferred that Claxon saw appellant's truck. This is a fatal distinction. If Claxon saw the approaching truck, he was necessarily negligent, as a matter of law, in proceeding onto the highway in the face of the immediate hazard created by the oncoming truck.

The trial court submitted this case to the jury on the question of proximate cause. Appellee contends that the appellant's truck could have squeezed by and the accident would not have occurred had the truck remained in its proper lane and had not cut left in an attempt to avoid collision. This view overlooks the fact that if Claxon had not violated the statute the accident would not have occurred. Even assuming appellant's driver was negligent in turning out of his lane, and thus reacting improperly to the emergency situation presented, the fact remains that the emergency was created by Claxon's negligent violation of his statutory duty not to pull out onto the highway in the face of a vehicle approaching so closely as to create an immediate hazard. It is error to allow such a case to go to the jury. Saddler v. Parham, Ky., 249 S.W.2d 945.

Here, as in the Saddler v. Parham case, we have a statutory violation which resulted in exactly the type of accident the statute was designed to prevent. On the

authority of that case, we must conclude that Claxon's violation of the statute was, as a matter of law, a proximate cause of the accident in which he died. Since Claxon's negligence was a proximate cause of the accident, it follows that his personal representative is precluded from any recovery for his death or for damages to his automobile.

Neither party to this action made a motion for a new trial. The trial court overruled a motion to grant a directed verdict in favor of appellant made at the close of all the evidence. Appellant then filed a motion for judgment notwithstanding the verdict, which also was overruled. CR 50.02.

The judgment is reversed with directions to enter judgment for the appellant.

CAMMACK, J., not sitting.