PEGGY ANN KERR, a Minor, By RALPH KERR, as Guardian Ad Litem, Appellant, v. LAURA ETHEL MILLS, Respondent.

No. 6271

April 8, 1971                              483 P.2d 902

*Nada Novakovich,* of Reno, for Appellant.

*Diehl, Recanzone and Evans,* of Fallon, for Respondent.

## OPINION

By the Court, GUNDERSON, J.:

Appellant Peggy Ann Kerr, a child of eight at the time of the two-car collision that gives rise to this action seeking recovery for personal injuries, asks reversal of a judgment entered against her upon an adverse jury verdict. On this appeal, she contends the trial court erred in denying her motion under NRCP 50(a), which sought a directed verdict upon the issue of liability, and in denying her post-trial motion under NRCP 50(b), which alternatively sought a judgment notwithstanding the verdict or a new trial. We affirm the judgment because, although respondent Mills may have been negligent in failing to see the car in which appellant was riding, the record does not permit us to say with certainty that this negligence was a proximate cause of the collision in question. Appellant further contends that this action, filed in Washoe County, should not have been transferred to Churchill County, where the 77-year-old respondent, a retired school teacher, has been a life-long resident. The latter complaint was not made below, and therefore we shall not entertain it.

The collision in question occurred on Sunday morning, July 13, 1969, some 90 feet east of the "intersection" of Scheckler and McLean roads in a rural area near the town of Fallon. Scheckler road is a two-lane, paved, through road that runs east and west. McLean road is a two-lane, paved, secondary road that courses in a southerly direction, meeting Scheckler obliquely to form an irregular "Y," the straight trunk of which is Scheckler. A stop sign controlling entry from McLean onto Scheckler is located in the fork thus formed, some 20 feet northerly of Scheckler's paved right of way. The corners of the roads' union are not angular; instead, viewed from the stop sign, McLean fans out in a broad curve to the east to conjoin with Scheckler; thus, as McLean's approach to Scheckler is a trifle oblique, the "intersection" is rather elongated. The foregoing can be discerned from the pictures in evidence, taken with the testimony, but we have before us neither a diagram nor any measurements of the intersection. It does appear, however,

that a driver turning to the east off McLean would be totally within Scheckler's eastbound traffic lane before passing a fence line by which the investigating officer defined the easterly boundary of the elongated intersection.

At the time of the collision, appellant Kerr was riding east along Scheckler road, as guest in the rear seat in a car driven by Roberta Strasdin. Appellant's theory of the case is that respondent Mills negligently drove from McLean into Scheckler's eastbound traffic lane, usurping Strasdin's right of way, and causing Strasdin's vehicle to collide with the Mills car. Appellant Kerr did not herself anticipate danger prior to the accident, and could give no testimony regarding its cause; in regard to liability, her case is based on testimony by Strasdin, by an investigating officer, and by Mills as an adverse witness.

The officer found "very light" skid marks commencing at a fence by which he defined the east end of the intersection, and measured them by pacing off approximately 90 feet (30 paces) to debris by which he fixed the point of impact, then on 84 feet east to where the Strasdin vehicle had come to rest across the westbound traffic lane. He could not say whether there were gaps in the skid marks; we cannot discern whether they were "two-wheel" or "four-wheel"; thus, differing inferences may be drawn from their presence. All they establish with any certainty is that, at some time before the collision, Strasdin did see the Mills car, and, at the fence line just referred to, applied her brakes to some degree. The officer also testified that Scheckler road is "unposted," that the general speed limit of "safe and reasonable" applies to the area, and that Miss Mills told him she had not seen the Strasdin car prior to the accident, a fact she acknowledged at trial.

Mills testified that she stopped on McLean at the stop sign, looked right and left, saw no cars, made her turn in the elongated intersection, and was proceeding straight along Scheckler when struck at about the point identified by the officer.

Strasdin testified that when she was approximately 10 feet west of the intersection, traveling approximately 60 miles per hour, she saw Mills' vehicle in the "opposite lane," applied her brakes, was unable to stop, and thus struck Mills' vehicle when it was "on the line" between the two lanes of traffic, doing damage to the left front of her vehicle and the right rear of Mills' vehicle.

The record contains little else to aid our deliberations. The general area was relatively flat; the day was clear, the pavement dry; the view of the drivers was substantially unobstructed, although utility poles on Scheckler's north side, the center-post of

Mills' car, and the angle at which McLean approaches Scheckler may have combined to limit the scope of Mills' vision. All witnesses agreed that Mills' car proceeded straight east on Scheckler after the impact, which might inferentially support the view that Mills had completed her turn by the time of the collision. Contrary to Mills' testimony, Strasdin said there was a car proceeding west in the westbound traffic lane (which, to the extent the jury believed it, might go to show why Strasdin did not pass around Mills), and Strasdin also fixed the point of impact closer to the intersection than did Mills and the officer. Other conflicts exist regarding facts that in themselves have uncertain probative value, e.g.: whether Strasdin's car was "totaled out" as she claimed, or slightly damaged as the officer testified; whether appellant's nose bled heavily or lightly; whether Strasdin told the officer that appellant's nose had been injured on a prior occasion. While some of these conflicts do not relate to matters that directly help fix liability, yet to the extent the jury disbelieved Strasdin in these and other matters in dispute, they might discount her testimony in others.

1. In determining whether denial of a motion under NRCP 50(a) or NRCP 50(b) is erroneous, we "must view the evidence and all inferences most favorably to the party against whom the motion is made." Bliss v. DePrang, 81 Nev. 599, 601, 407 P.2d 726, 727 (1965); Wilson v. Perkins, 82 Nev. 42, 409 P.2d 976 (1966). Collecting a number of Nevada authorities in support of the proposition, we recently said in Ewing v. Sargent, 87 Nev. 74, 482 P.2d 819 (1971): "Precedents of this court establish beyond cavil that it is the prerogative of the trier of fact to evaluate the credibility of any witness's testimony, and to reject it, at least where the testimony is contradicted as in this case, is impeached, is inherently incredible, or conflicts with other evidence or inferences arising from evidence." However, as we also pointed out in Ewing v. Sargent, a jury "may not *arbitrarily* reject credible, uncontradicted testimony." See also: Price v. Sinnott, 85 Nev. 600, 460 P.2d 837 (1969); cf. Douglas Spencer v. Las Vegas Sun, 84 Nev. 279, 439 P.2d 473 (1968); J. Wigmore, Evidence, § 2495, at 306 (3rd ed. 1940).

The minor appellant, as a guest in Strasdin's car, is entitled to recover if the record, reviewed in the light of these principles, unequivocally shows that Mills was negligent and a proximate cause of the accident, regardless of any negligence and causation on the part of Strasdin. Lee v. Baker, 77 Nev. 462, 465, 366 P.2d 513, 514 (1961).

2. NRS 484.319 imposed upon respondent Mills a duty to stop "at the entrance" to Scheckler road, and to yield the right of way to other vehicles "approaching so closely on such through highway as to constitute an immediate hazard."[1] In Botts v. Rushton, 63 Nev. 426, 172 P.2d 147 (1946), this court stated that it was the disfavored driver's duty "not only to stop at the stop sign, but also to look carefully" and permit the favored driver to pass, unless the situation was "such as to clearly indicate that she could cross with a fair margin of safety." 63 Nev., at 438. In substance, appellant's counsel contends respondent, having a duty to stop and look, is chargeable with negligence as a matter of law, because she must be presumed to have seen "that which was within the sight and range of vision." L.A. & S.L.R. Co. v. Umbaugh, 61 Nev. 214, 236, 123 P.2d 224, 234 (1942). Numerous authorities support appellant's contention that, when there is a duty to look, it is negligence as a matter of law not to see that which is in plain view.[2]

---

[1]"484.319 *Vehicle entering stop or yield entrance to through highway, intersection.*

"1. Where proper signs have been erected, the driver of a vehicle shall stop or yield at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from such through highway or which are approaching so closely on such through highway as to constitute an immediate hazard, but such driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on such through highway shall yield the right of way to the vehicles so proceeding into or across the through highway.

"2. The driver of a vehicle shall stop in obedience to a stop sign or yield in compliance with a yield sign at an intersection if a stop sign or a yield sign is erected at one or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obligated to stop or yield and which are within the intersection or approaching so closely as to constitute an immediate hazard during the time such driver is moving across or within the intersection." (Added to NRS by Stats. of 1969, 1496)

The parties allowed the jury to be instructed under NRS 484.163, a similar statute, which was repealed before the accident. Stats. of 1969, 1510.

[2]Applying this rule to intersection collisions, see: Hefner v. Pattee, 96 P.2d 583 (Wash. 1939); Arline v. Alexander, 2 So.2d 710 (La.App. 1941); Couch v. Hensley, 305 S.W.2d 765 (Ky.App. 1957); Vaughn v. Jones, 257 S.W.2d 583 (Ky.App. 1953); cf. Asher v. Fox, 134 F.Supp. 27 (E.D.Ky. 1955); cf. Meyer v. Platte Valley Const. Co., 25 N.W.2d 412 (Neb. 1946); cf. Dashnow v. Myers, 155 A.2d 859 (Ver. 1959). Applying the rule to pedestrians entering upon streets, see: Moss v. H. R. Boynton Co., 186 P. 631 (Cal.App. 1919); Finkle v. Tait, 203 P. 1031 (Cal.App. 1921); Chase v. Thomas, 46 P.2d 200 (Cal.App. 1935); Gibb v. Cleave, 55 P.2d 938 (Cal.App. 1936).

Respondent's counsel urges that this rule is not necessarily applicable to this case because, he suggests, the jury might have believed that Strasdin was so far down Scheckler as not to have been in plain view when Mills entered the intersection. Respondent's paramount contention, however, is that any negligence of Mills in failing to look effectively was not necessarily the efficient, i.e., "proximate," cause of the accident: that if Strasdin's vehicle, though visible, was not so close as to be an "immediate hazard" to Mills' entry onto Scheckler road, a prudent person might reasonably have entered upon Scheckler road when Mills did, expecting that Strasdin's vehicle would not be operated in such a way as to cause a collision. In substance, respondent's counsel urges that, allowing respondent the benefit of all favorable evidence and inferences, the record does not totally foreclose such a view of the case. We are constrained to agree.

Despite any other uncertainties in the record, we might determine that appellant had proved proximate cause as a matter of law, if we could see: (1) that respondent was violating a law designed to prevent the very character or type of injury which appellant received; (2) that the violation of the law continued to the very moment of the impact; and (3) that the injury would not have occurred, but for respondent's violation of the law. Cf. Styris v. Folk, 62 Nev. 208, 216, 146 P.2d 782, 785 (1944). Respondent's failure to look effectively may well supply the first requisite, as appellant's counsel forcefully contends; because respondent *never* looked effectively, it may also be cogently urged that the second element is satisfied; yet, as respondent's counsel has suggested, we cannot say with certainty, from the record before us, that the accident would not have occurred but for respondent's failure to exercise an effective view.

In Botts v. Rushton, cited above, this court said: "The purpose of arterial highways is to facilitate through traffic, afford rapid transit, and permit vehicles thereon to move freely, thus accelerating the flow of traffic over such favored highways." 63 Nev., at 439. Consistent with this view, another court has said the words "immediate hazard" mean "a vehicle so close to the intersection that, should it continue with undiminished speed and should the unfavored vehicle start, the two would reach the point where their paths would converge at approximately the same time." Brown v. Clancy, 43 A.2d 296, 298 (D.C.Mun.App. 1945). Still another court has said that an immediate hazard is created "when a vehicle approaches an

intersection on a favored street at a reasonable speed under such circumstances that, if the disfavored operator proceeds into the intersection, it forces the former sharply and suddenly to check his progress or to come to a halt in order to avoid a collision." Fusco v. Dauphin, 88 A.2d 813, 816 (Del. 1952).[3] However, regardless of how we might verbalize a definition of "immediate hazard," in the instant case we are simply unable to say that Strasdin's vehicle constituted an "immediate hazard" when Mills entered the intersection, or that the accident happened because it was an "immediate hazard."

As respondent's counsel correctly points out, the jury could not credit Strasdin's testimony that Mills was in the "opposite lane" when Strasdin herself was 10 feet west of the intersection going 60 miles per hour; for, had this been true, the accident would have happened before Mills cleared the elongated intersection. The accident must have happened in some other way than that described by Strasdin. If one attempts to work backward from such uncontroverted data as the record contains (considering the longest time it may have taken Mills to reach the point of impact from the place of her entry onto Scheckler road, in order to compute from such time the possible location of the Strasdin vehicle when Mills entered Scheckler), then even accepting Strasdin's estimate of her own speed, one is forced to conclude that the jury could properly believe that Strasdin was not necessarily an "immediate hazard," that the accident did not necessarily result from Mills' negligence, but may have resulted solely from the negligence of Strasdin. As respondent's counsel argued, Strasdin may have approached Mills intending to pass, observed too late the vehicle she says was traveling west, and collided with Mills simply because she had left herself no way to avoid a collision. Furthermore, since Strasdin's testimony was unquestionably contradicted and impeached, it would not even have been arbitrary for the jury to have rejected Strasdin's testimony as to her approximate speed, and, inferring from Mills' failure to see her that she was not in plain view, to decide that Mills was not negligent at all. Ferris v. Albright's Electric Co., 70 Nev. 528, 275 P.2d 755 (1954).

Gaps in the record make it impossible to reconstruct the

[3]Other cases in which courts have grappled with the meaning of "immediate hazard" in statutes like ours are: Central Petroleum Company v. Wright, 290 S.W.2d 465 (Ky.App. 1956); Romans v. Duke, 230 S.W.2d 439 (Ky.App. 1950); Huber & Huber Motor Express v. Croley, 196 S.W.2d 965 (Ky.App. 1946); Carr v. Holtslander, 246 P.2d 678 (Cal.App. 1952).

accident from such uncontroverted facts as are available. This would have benefitted appellant, had she been favored with the jury's verdict, but it defeats her on this appeal.

The judgment is affirmed.

ZENOFF, C. J., BATJER, MOWBRAY, and THOMPSON, JJ., concur.